Larry D. BAXTER *v.* STATE of Arkansas

CR 81-101                                626 S.W. 2d 935

Supreme Court of Arkansas
Opinion delivered January 18, 1982
[Rehearing denied February 16, 1982.]*

---

*PURTLE, J., would grant the petition.

540

*Art Anderson* and *Mart Vehik*, of *McMath & Leatherman, P.A.*, for appellant.

*Steve Clark*, Atty. Gen., by: *Theodore Holder*, Asst. Atty. Gen., for appellee.

RICHARD B. ADKISSON, Chief Justice. Appellant, Larry D. Baxter, was convicted and sentenced to five years for aggravated robbery and three years for theft of property. The sentences were set to run concurrently. The Court of Appeals, by a three to three vote, affirmed the trial court, holding that the stop, arrest, and subsequent search of appellant's car and seizure of objects in the car were lawful. *Baxter* v. *State*, Court of Appeals, not designated for

publication (September 9, 1981). On petition for review, we affirm.

Shortly before 4:00 p.m.[1] on March 27, 1980, two men with pistols entered M & M Jewelers on Barrow Road, Little Rock. Jewelry cases were broken and jewelry items were placed in two sacks. The clerks were made to lie face down on the floor and were sprayed with mace.

The facts in part as set out by Judge Cloninger of the Court of Appeals are:

"At 4:05 p.m. Officer Porterfield of the Little Rock Police heard the police broadcast of the robbery. One of the robbers was reported to be carrying a Colt .45 automatic and wearing a rubber Halloween mask, green army fatigues, blue jeans and army boots; the other subject was reported to possess a .357 Magnum, and was wearing a rubber Halloween mask, green army fatigues, blue jeans and tennis shoes. Both men were described as white males about six feet tall.

"Officer Porterfield immediately went to check out Kanis Park, which is less than one-fourth mile from M & M Jewelers. The area between the store and Kanis Park is a wooded and grassy area, and intermittent rain had been falling. There were no leaves on the trees and the officer could see the entire park area. The officer met appellant's car, eastbound in the park away from the direction of M & M Jewelers."

Only appellant was visible in the car and no other person or vehicle was observed in the park. The officer turned his vehicle around, followed appellant's car, and stopped it at 4:10 p.m. to ask the person if he had seen anybody in the park. The officer stopped 15 feet behind appellant's car. Appellant then came back to the police car

---

[1]Carolyn Sue Teeter, who was employed at M & M Jewelers the day of the robbery, testified at trial that she could not remember the exact time of the robbery, but set various times for when the robbery occurred; all times stated were between 3:15 and 3:55 p.m. Tim Truelove, another employee on the day of the robbery, testified that the robbery "was somewhere in the three o'clock hour. I would say between 3:30 and 4:00 p.m."

and identified himself as Larry Baxter. Appellant was wearing wet jeans and muddy tennis shoes. The officer told appellant that there had just been a robbery in the area and asked if he had seen anybody in the park. Appellant said he had seen no one. Because of appellant's wet jeans and muddy tennis shoes, the officer asked him for his driver's license. The officer also wanted appellant's identification in case detectives wanted to contact him later as a witness. As appellant was removing his driver's license from his wallet, the officer noticed his hands shaking. The officer then told appellant that he was going to look in his car, at which time appellant told the officer that he had two friends in his car.

The officer found two men matching the description of the reported robbers lying on the seats of the car. One of the men had on muddy black boots and wet jeans, and the other had on muddy tennis shoes and wet pants. The officer arrested the three and placed them in the back of his police car.

Two other officers arrived and observed through the window of appellant's car a green army type jacket, two pillowcases filled with something, and a wig. The items were removed from the car. Upon examination it was found that the pillowcases contained 192 different items of jewelry, a .357 Magnum, and a .45 automatic.

The crucial issue in this case is whether the initial stop of appellant was valid under state and federal law. If the stop is found to be valid, the logical progression of events which followed resulted in probable cause for the arrest. The subsequent search of appellant's car after the arrest was a search incident to a lawful arrest and valid under the recent case of *New York* v. *Belton*, 450 U.S. 1028, 101 S. Ct. 2860 (1981).

Cases regarding the police authority to make investigatory stops based upon reasonable suspicion that a vehicle or a person is involved in criminal activity are inapplicable to the stop at issue here. *See U.S.* v. *Cortez*, 449 U.S. 411 (1981) and *Terry* v. *Ohio*, 392 U.S. 1 (1968). Also inapplicable to this stop are cases in which the police have

reasonable cause to believe that the person stopped is a material witness. Rule 3.5, Ark. Rules Crim. Proc., Ark. Stat. Ann., Vol. 4A (Repl. 1977).

Involved here is the question of the extent of permissible interruption a citizen must bear to accommodate a law enforcement officer who is investigating a crime. The practical necessities of law enforcement and the obvious fact that any person in society may approach any other person for purposes of requesting information make it clear the police have the authority to approach civilians.

There is nothing in the Constitution which prevents the police from addressing questions to any individual. *See Terry* v. *Ohio, supra.* However, the approach of a citizen pursuant to a policeman's investigative law enforcement function must be reasonable under the existent circumstances and requires a weighing of the government's interest for the intrusion against the individual's right to privacy and personal freedom. To be considered are the manner and intensity of the interference, the gravity of the crime involved, and the circumstances attending the encounter. *People* v. *De Bour,* 40 N.Y. 2d 210, 352 N.E. 2d 562 (1976).

Rule 2.2, Ark. Rules Crim. Proc., Ark. Stat. Ann., Vol. 4A (Repl. 1977) is a codification and an accomodation of these interests:

Rule 2.2   Authority to Request Cooperation.
(a)   A law enforcement officer may request any person to furnish information or otherwise cooperate in the investigation or prevention of crime. The officer may request the person to respond to questions, to appear at a police station, or to comply with any other reasonable request.

We pointed out in *Meadows* v. *State,* 269 Ark. 380, 602 S.W. 2d 636 (1981) that this Rule could be used in investigating crime, although it was found inapplicable to the facts in that case because the officers detained persons who were suspected of engaging in criminal activities.

The circumstances of this case bring us to the conclusion that this stop was reasonable. The scene of the crime was located approximately a quarter of a mile from Kanis Park. The robbers were last seen leaving the rear door of the jewelry store which placed them in a wooded area adjoining Kanis Park. The time sequence was such that a person in Kanis Park about the time that appellant was stopped likely would have seen the robbers — there being no one else in the park on this rainy afternoon. The intrusion into appellant's right of privacy and freedom of movement was minimal as compared to the governmental interest in investigating a very serious class A felony offense. The manner and intensity of the interference was slight and significantly casual. The officer stated that he only wanted to ask appellant if he had seen anyone in the park. The initial encounter was not an aggressive one as evidenced by the fact that the officer allowed appellant to walk back to his police car immediately after stopping him.

The circumstances leading up to the arrest were sufficient to establish probable cause for the arrest — muddy tennis shoes, wet jeans, shaking hands, and appellant's statement that two other persons (who were not visible) were in the car. Having made a lawful custodial arrest of the occupants of the automobile, the officer was justified, as a contemporaneous incident of that arrest, in searching the passenger compartment of the car. The police may also examine the contents of any containers found within the passenger compartment; the container may be searched whether open or closed since the lawful custodial arrest justifies the infringement of any privacy interest the arrestee may have in the containers. A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a limited search incident to the arrest requires no additional justification. *New York* v. *Belton, supra.*

Affirmed.

PURTLE, J., dissents.

JOHN I. PURTLE, Justice, dissenting. I respectfully

dissent because the majority has denied appellant his rights as guaranteed by the Fourth Amendment to the United States Constitution. I feel, first, that the stop and arrest of the appellant should have been held to be illegal and second, that the search and seizure of appellant's automobile was not done within constitutional bounds. I would like to address myself to these points individually.

## THE STOP AND ARREST

Officer Porterfield received a radio broadcast at 4:05 p.m. on the day of the robbery, which included a description of two suspects. No car was mentioned in the broadcast. On a hunch, he went directly to Kanis Park, met a vehicle, turned, overtook it, flipped on his blue lights, and pulled over appellant who was driving a bright orange Vega. Officer Porterfield testified that appellant was not breaking any laws or acting unusual in any way and did not fit the description of the robbers. As a matter of fact, the observed vehicle had an opportunity to turn away from the police car at an intersection, but the car passed directly by the police car and the police officer and appellant made eye contact with one another. The officer was not the least bit suspicious of appellant at this time. Nevertheless, Officer Porterfield turned around, switched on his blue lights, gave chase and pulled the vehicle over. The officer's explanation was that the driver might be a possible witness to a robbery which had taken place perhaps an hour before (3:15 p.m. according to one witness) and at a place a quarter mile away.

Ark. Stat. Ann. § 43-432 (Repl. 1977) deals directly with the stopping of witnesses to a felony, the pertinent part of which reads:

> Whenever a law enforcement officer has reasonable cause to believe that any person found at or near the scene of a felony is a material witness to the felony, he may stop that person and after having identified himself he must advise the person of the purpose of the stopping and may then demand of him his name, address, and any information he may have regarding the felony. . . .

Based on review of the record, I can find nothing to substantiate the majority's expressed opinion that the stop was based on reasonable suspicion. To the contra, the officer was not even remotely suspicious that appellant was a suspect nor was there evidence that he suspected appellant was a material witness. The stop violated the appellant's Fourth Amendment rights against unreasonable searches and seizures and unreasonably infringed on his right as a motorist to be free from arbitrary disruption or unrestricted lawful travel. When a police officer accosts an individual and by show of authority restrains his liberty short of arrest, the stop becomes a "seizure" of the person. Such a seizure must then be tested for reasonableness under the Fourth Amendment. *Terry* v. *Ohio*, 392 U.S. 1 (1968). Arkansas Rules of Criminal Procedure, Rule 2.1, defines reasonable suspicion:

> "Reasonable suspicion" means a suspicion based on facts or circumstances which of themselves do not give rise to the probable cause requisite to justify a lawful arrest, but which give rise to more than a bare suspicion; that is, a suspicion that is reasonable as opposed to an imaginary or purely conjectural suspicion.

Our statutes have also set limitations on the right of a police officer to stop and search. Ark. Stat. Ann. § 43-434 (Repl. 1977) states in part:

This Act (§§ 43-429 — 43-436) shall not be construed to:

(1) Permit an officer to stop just any passerby . . .

(2) Permit the stopping and searching of any person found in the vicinity of a felony scene, merely because he happens to be there.

There is no doubt in my mind that Officer Porterfield's blue-light chase and pull-over of the first vehicle he observed in Kanis Park upon the pretense that the occupant (who did not fit the description of either robbery suspect) was somehow a witness to a crime committed almost an hour before and a quarter mile away was nothing short of an

unreasonable and patently violative intrusion of appellant's Fourth Amendment rights. There were other less intrusive means readily available to Officer Porterfield if he had indeed been concerned with obtaining information from the appellant. In *United States* v. *Ward*, 488 F. 2d 162 (9th Cir. 1973), the court stated:

> Clearly, the narrow exception of *Terry* v. *Ohio*, supra, which allows investigative stops on grounds short of probable cause cannot be stretched so far as to allow detentive stops for generalized criminal inquiries.

The court there held that where less intrusive means were available, it then followed that "there were no exigent circumstances warranting the extreme nature of a vehicular stop by a siren on a public street."

As far as the subsequent arrest is concerned, not only would it be illegal as the product of an illegal stop, but also, even standing alone, Officer Porterfield lacked the necessary probable cause to effect it. Officer Porterfield cited three factors for his justification of arresting the appellant: (1) that appellant was wearing tennis shoes, (2) that is pants legs appeared to be ". . . a little bit wet," and, (3) that his hands shook when he produced his driver's license. However, he knew none of these things until after he stopped appellant and, as a matter of fact, did not even mention shoes or wet pants in his police report.

Although the officer admitted that the appellant did not meet the description of the robbers, except for the fact he was wearing tennis shoes, he did not dismiss him. When appellant stated to the officer that there were two other persons in the car, Officer Porterfield pulled his pistol and kept the appellant covered while he approached the Vega.

I cannot allow the majority to say in effect that "the end justifies the means" as seems to be the case here. Even though Officer Porterfield's hunch turned out to be fruitful, it cannot be said that either the stop or the arrest was based on probable cause. The reason we have set standards is in order that people may be secure in knowing what their

rights are. An intrusion on anyone's rights in this regard is a diminution of everyone's rights. The majority opinion will allow almost any stop and subsequent arrest on the basis that the officer was merely investigating.

Admittedly, the stop was not made pursuant to the officer's founded suspicion that appellant was involved in criminal behavior, rather, it was made to question appellant about third parties and any information he might have had about them in connection with the crime. Once he had made inquiry as to this he should have dismissed appellant. Yet, the officer has made a feeble attempt to justify his subsequent arrest on the basis of a shaking hand, damp pants legs and tennis shoes, all of which certainly do not constitute probable cause. Having found that Officer Porterfield's stop of appellant's car is an unreasonable intrusion under the Fourth Amendment it should be held that any and all materials discovered as a result of that stop should have been suppressed as the fruit of an unlawful stop. *Wong Sun* v. *United States,* 371 U.S. 471 (1963).

### THE SEARCH AND SEIZURE

As to the search and seizure of the back compartment of the automobile, I believe the majority's reliance on *New York* v. *Belton,* 450 U.S. 1028, 69 L. Ed. 2d 768 (1981), to be totally without basis. The United States Supreme Court's landmark decision in *Belton* specifically states:

> . . . we hold that when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile.

Firstly, this was not a lawful custodial arrest, as I have pointed out in the first part of this dissent; and, secondly, the hatchback portion of a Vega hatchback automobile can in no wise be considered as part of the "passenger compartment." I see no way passengers could possibly fit into the luggage compartment of a hatchback automobile. One of the officers even testified that he had to take the car keys and

open the hatchback (he called it a "trunk") to get the pillowcases.

Under our decision in *Moore* v. *State*, 268 Ark. 171, 594 S.W. 2d 245 (1980), coupled with the United States Supreme Court's decision in *New York* v. *Belton,* supra, there are three exceptions involved in a warrantless search of an automobile: (1) cases involving danger to the officers; (2) cases involving loss or destruction of evidence; and, (3) searches of the passenger compartment when such search is incident to a lawful arrest. The present case contains none of the above-mentioned criteria. Therefore, the fruits should be considered inadmissible under *Wong Sun* v. *United States,* supra. The officers had the automobile under their exclusive control, they had the appellant and two other passengers under arrest and conceivably they had the right to search the passenger compartment. But to search the hatchback portion, they would have had to submit their probable cause to an impartial magistrate for a determination and issuance of a warrant. To do otherwise would not comport with the clear provisions of the Fourth Amendment to the United States Constitution.

There are two other facets of this case which trouble me. The initial police radio broadcast mentioned that one of the robbers was wearing black boots. In what I perceive to be an after the fact attempt to establish probable cause, at a preliminary hearing in the case, one officer testified he observed a pair of black boots sitting in the front floorboard of the vehicle. Another officer testified he saw the boots in the storage compartment of the hatchback vehicle, and a third officer testified he took the boots off of one of the other codefendants at the police station. It was stipulated that there was only one pair of boots involved. The second point is the refusal to grant appellant's request to have the codefendants' trial before his in order that they might be free to testify and corroborate his story that he had merely come to the park in response to their telephone call for the sole purpose of picking them up and transporting them to their home.