Glover McDANIEL *v.* STATE of Arkansas

CA CR 86-162                    726 S.W.2d 688

Court of Appeals of Arkansas
Division I
Opinion delivered April 1, 1987

*Sherman & James*, by: *Anthony J. Sherman*, for appellant.

*Steve Clark*, Att'y Gen., by: *J. Blake Hendrix*, Asst. Att'y Gen., for appellee.

MELVIN MAYFIELD, Judge. Appellant was convicted of possession of a controlled substance, cocaine, and sentenced as a habitual offender to twenty years in the Arkansas Department of Correction. On appeal, he contends his stop and detention were without proper cause, and he challenges the constitutionality of the strip search during which the cocaine was discovered.

In September of 1985, the Pine Bluff Police Department began the investigation of a purse-snatching incident. The purse had contained several items of expensive jewelry, and the officers uncovered evidence that the jewelry had been sold to a Little Rock man known as "Bo Peep" who drove a "tan-looking" Lincoln Continental. Eddie Lee Pride, one of several Little Rock men known by Little Rock police to drive a Lincoln and go by the nickname "Bo Peep," was approached by Pine Bluff police and agreed to go there for questioning. After the interview, it was decided that he had no involvement in the incident under investigation and, as an officer was driving him back to Little Rock, Pride spotted a tan Lincoln automobile approaching Pine Bluff. Pride identified the driver as one of the other men from Little Rock known as "Bo Peep," and the officer radioed this information back to headquarters and subsequently the Lincoln was stopped by Pine Bluff police. The driver, appellant, was very cooperative and told the officers that he had no driver's license and had been drinking whiskey during the drive from Little Rock. Appellant was arrested and, because he was from out of town and did not have enough money with him to post a cash bond, he was taken to the police station for booking and incarceration.

As a routine jail policy when a suspect is being confined, appellant was subjected to a visual strip search as he removed his civilian clothing in preparation for putting on his jail uniform. The search involved an observation of appellant's bare skin and an inspection of the clothing he removed. No body cavity search was conducted. As the appellant placed the clothing he removed in a bag, the police saw a small package in the bag, but the appellant grabbed it and swallowed it. Another package, however, was recovered from the bag and, according to a chemist from the State Crime Laboratory, the contents tested positive for

cocaine. Appellant's motion to suppress this evidence was denied by the trial court. On appeal he argues that this ruling was error.

Appellant first contends that the original stop of his automobile and his arrest were unconstitutional because the police did not have the proper cause to stop him. Several A.R.Cr.P. rules are pertinent. Rule 3.1 provides:

> A law enforcement officer lawfully present in any place may, in the performance of his duties, stop and detain any person who he *reasonably suspects* is committing, has committed, or is about to commit (1) a felony, or (2) a misdemeanor involving danger of forcible injury to persons or of appropriation of or damage to property, if such action is reasonably necessary either to obtain or verify the identification of the person or to determine the lawfulness of his conduct. An officer acting under this rule may require the person to remain in or near such place in the officer's presence for a period of not more than fifteen (15) minutes or for such time as is reasonable under the circumstances. At the end of such period the person detained shall be released without further restraint, or arrested and charged with an offense. (Emphasis added.)

Rule 2.1 defines "reasonable suspicion" as:

> a suspicion based on facts or circumstances which of themselves do not give rise to the probable cause requisite to justify a lawful arrest, but which give rise to more than a bare suspicion; that is, a suspicion that is reasonable as opposed to an imaginary or purely conjectural suspicion.

Ark. Stat. Ann. § 43-435 (Repl. 1977) lists a number of factors to be considered in determining whether the officer had grounds to "reasonably suspect" someone, including any information received from third persons and whether or not the person is known to police.

These rules were examined by the Arkansas Supreme Court in *Hill* v. *State*, 275 Ark. 71, 628 S.W.2d 285 (1982), in which Hot Springs police had stopped a man who matched the description of a suspect in a murder and assault which had just occurred in an adjacent county. The radio dispatch had described a white male and a late model maroon Ford Thunderbird. In

approving the stop, the court stated:

> The courts have used various terms to describe how much cause or suspicion is necessary or reasonable in order to stop a person or vehicle. The common thread which runs through the decisions makes it clear that the justification for the investigative stops depends upon whether, under the totality of the circumstances, the police have specific, particularized, and articulable reasons indicating the person or vehicle may be involved in criminal activity.

275 Ark. at 80 (citations omitted).

Furthermore, A.R.Cr.P. Rule 2.2 authorizes officers to request any person to furnish information or otherwise cooperate in the investigation or prevention of crime. This rule was relied on by the court in *Baxter* v. *State*, 274 Ark. 539, 626 S.W.2d 935 (1982). In that case a jewelry store near Kanis Park had just been robbed. A police officer stopped Baxter's car to inquire whether he had seen any suspicious persons in the park. Observing Baxter's nervousness, the officer decided to look into the car and there he discovered two men matching the description of the robbers. In affirming the conviction, the court stated:

> Cases regarding the police authority to make investigatory stops based upon reasonable suspicion that a vehicle or a person is involved in criminal activity are inapplicable to the stop at issue here. . . .

> Involved here is the question of the extent of permissible interruption a citizen must bear to accommodate a law enforcement officer who is investigating a crime. The practical necessities of law enforcement and the obvious fact that any person in society may approach any other person for purposes of requesting information make it clear the police have the authority to approach civilians.

> There is nothing in the Constitution which prevents the police from addressing questions to any individual. . . . However, the approach of a citizen pursuant to a policeman's investigative law enforcement function must be reasonable under the existent circumstances and requires a weighing of the government's interest for the intrusion against the individual's right to privacy and

personal freedom. To be considered are the manner and intensity of the interference, the gravity of the crime involved, and the circumstances attending the encounter.

274 Ark. at 542-43 (citations omitted).

■ When the officer in the present case stopped appellant, he was aware that appellant had been identified as a suspect in a felony under investigation. Under the totality of the circumstances, we think the trial court could properly find that the officer had adequate reason to stop appellant's vehicle under both rules 3.1 and 2.2.

■ Appellant also argues that the cocaine should have been suppressed because it was discovered during an unconstitutional strip search. Appellant first cites *Richardson* v. *State*, 288 Ark. 407, 706 S.W.2d 363 (1986), and cases cited therein, for the proposition that the search must have some relation to the nature and purpose of the arrest. That case involved a pretext arrest and appellant submits that this was also the case here. We do not think the evidence supports that conclusion. Appellant was arrested for drinking while driving and for driving without a valid license. There is nothing in the record to indicate that officers suspected appellant might be carrying contraband and arrested him on a pretext in order to conduct a search for contraband.

■ The search here was conducted pursuant to the authority granted by A.R.Cr.P. Rule 12.2, which provides:

> An officer making an arrest and the authorized officials at the police station or other place of detention to which the accused is brought may conduct a search of the accused's garments and personal effects ready to hand, the surface of his body, and the area within his immediate control.

According to 1 Ringel, *Searches & Seizures, Arrests and Confessions*, § 12.6(e) (2d ed. 1986), strip searches of arrestees are permitted, in spite of an inherent intrusiveness into a person's privacy, in order to protect the safety of police officers, to maintain order in jails, and to disclose the fruit of a crime. Some courts condemn routine strip searches for traffic and other minor offenses, distinguishing the status of minor offenders from that of suspected felons. In *Bell* v. *Wolfish*, 441 U.S. 520 (1979), a civil

case, the United States Supreme Court approved strip searches of prisoners after contact with visitors by "balancing the significant and legitimate security interests of the institution against the privacy interests of the inmates." *See* 441 U.S. at 560.

Appellant relies on *Giles* v. *Ackerman*, 746 F.2d 614 (9th Cir. 1983), *Jones* v. *Edwards*, 770 F.2d 739 (8th Cir. 1985), *Hill* v. *Bogans*, 735 F.2d 391 (10th Cir. 1984), and *John Does 1-100* v. *Ninneman*, 612 F.Supp. 1069 (D.C. Minn. 1985). These were all civil rights cases in which strip searches were held to be unconstitutional. However, in all of them, the arrest was for a misdemeanor, minor traffic offense, or some similar infraction not normally associated with drugs or weapons, and the person arrested had no prior arrest record. For example, Mrs. Giles was arrested because her vehicle registration had expired and she had several outstanding parking tickets; Jones was arrested for an animal leash law violation; Hill was stopped for driving with an expired automobile inspection sticker and arrested because of an outstanding warrant that had been withdrawn; in *John Does 1-100*, one person had been arrested for failure to appear at a child support hearing and one for driving after revocation of his driver's license. Our research has revealed similar cases. *See John Does 1-100* v. *Boyd*, 613 F.Supp. 1514 (D.C. Minn. 1985) (all were arrested for misdemeanors or minor offenses); *Sala* v. *County of Suffolk*, 604 F.2d 207 (2d Cir. 1979) (female plaintiff arrested for failure to respond to a court summons); *Tinetti* v. *Wittke*, 479 F.Supp. 486 (E.D. Wis. 1979) *aff'd*, 620 F.2d 160 (7th Cir. 1980) (per curiam) (female arrested for speeding); *Logan* v. *Shealy*, 660 F.2d 1007 (4th Cir. 1981), *cert. denied sub nom. Clements* v. *Logan*, 455 U.S. 942 (1982) (female attorney arrested for driving while intoxicated, strip search conducted in holding cell whose window blinds were either broken or open).

We find the above cases inapplicable to the situation at bar where the appellant, although arrested for two traffic offenses, was a suspect in a felony, and attempted at trial to have contraband discovered in a strip search suppressed. Even in a civil case, recovery was denied where the plaintiff had been arrested for felonious assault, was being confined in jail and would come into contact with the general jail population, the search was visual only and was conducted by a female attendant, and the search occurred only once and was conducted in private. *See Dufrin* v.

*Spreen*, 712 F.2d 1084 (6th Cir. 1983). And in a criminal case, *United States* v. *Duncan*, 586 F.Supp. 1305 (W.D. Mich. 1984), the defendant, charged with numerous drug offenses, moved to suppress certain evidence seized in searches of his person, automobile and house. In regard to the strip search of his person, the court stated:

> Assuming that defendant's arrest was made pursuant to a valid warrant, the subsequent search of defendant's person prior to his being placed in a jail cell was permissible. Whether justified as a search incident to arrest, *United States* v. *Robinson*, 414 U.S. 218, 236, 94 S.Ct. 467, 477, 38 L.Ed.2d 427 (1973), *United States* v. *Edwards*, 415 U.S. 800, 807, 94 S.Ct. 1234, 1239, 39 L.Ed.2d 771 (1974), or as an inventory search of defendant's personal effects prior to his being placed in a cell, *Illinois* v. *Lafayette*, ___ U.S. ___, 103 S.Ct. 2605, 2610, 77 L.Ed.2d 65 (1983), the search of defendant's person at the county jail did not violate the Fourth Amendment. *See also Bell* v. *Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979) holding that strip searches of pretrial detainees in a detention facility after each contact visit with a person from outside the institution does not violate the Fourth Amendment. Based on the foregoing, defendant's motion to suppress the evidence obtained as a result of the search of his person is denied.

586 F. Supp. at 1311.

We are persuaded that the trial court did not err in refusing to suppress the evidence in the instant case. In deciding this issue, we also take into consideration the reason for the exclusionary rule, as stated in *United States* v. *Leon*, 468 U.S. 897 (1984), *reh'g denied*, 468 U.S. 1250.

> The Fourth Amendment contains no provision expressly precluding the use of evidence obtained in violation of its commands, and an examination of its origin and purposes makes clear that the use of fruits of a past unlawful search or seizure "work[s] no new Fourth Amendment wrong." . . . The wrong condemned by the Amendment is "fully accomplished" by the unlawful search or seizure itself, ibid., and the exclusionary rule is

neither intended nor able to "cure the invasion of the defendant's rights which he has already suffered." . . . The rule thus operates as "a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved." . . .

Whether the exclusionary sanction is appropriately imposed in a particular case, our decisions make clear, is "an issue separate from the question whether the Fourth Amendment rights of the party seeking to invoke the rule were violated by police conduct."

468 U.S. at 906 (citations omitted).

Thus, even if we felt appellant's constitutional rights were violated by the search conducted here, which we do not, we would still think it proper, under the circumstances of the instant case, to affirm the trial court's refusal to grant appellant's motion to suppress in this case where he was tried for a criminal offense.

Affirmed.

CRACRAFT and JENNINGS, JJ., agree.