Billy J. BLAKEMORE *v.* STATE of Arkansas

CA CR 88-48                              758 S.W.2d 425

Court of Appeals of Arkansas
Division I
Opinion delivered October 19, 1988

336

*Hubert W. Alexander*, for appellant.

*Steve Clark*, Att'y Gen., by: *Lynley Arnett*, Asst. Att'y Gen., for appellee.

JAMES R. COOPER, Judge. The appellant was convicted in the Municipal Court of Jacksonville of driving while intoxicated, first offense. The appellant appealed to circuit court, where, after a *de novo* bench trial, he was again found guilty and he was sentenced to seven days in the county jail, with six days suspended; fined $150.00; and his driver's license was suspended for ninety days. The appellant argues three points on appeal: that the court erred in finding that he was in control of a vehicle; that the trial court erred in finding that there was reasonable suspicion to justify the police officer's detention of him; and that the trial court erred in finding that he was intoxicated. We affirm.

The record reveals that the appellant was arrested on March 15, 1987. Dwight Rushing, a deputy with the Pulaski County Sheriff's office, testified that, at 3:00 a.m., he was routinely checking businesses located in his patrol area when he saw a red pickup truck sitting in the parking lot of the Dixie Food and Fun Bar. He observed that the motor was running and the lights were on. After checking the building to make sure there had not been a break-in, he approached the car and saw the appellant either

"asleep or passed out" in the front seat of the truck and woke him up. Deputy Rushing stated that it was difficult to wake the appellant and he "had to beat on the door and window for a while."

When the appellant got out of his truck, Deputy Rushing noticed that he smelled of alcohol and stumbled. Deputy Rushing gave the appellant a field sobriety test which the appellant failed.

Testifying in his own behalf, the appellant explained that he was a truck driver and had just gotten in from California that day and that he went by the Dixie Bar to see a friend. The appellant stated that he got to the bar at 9:00 p.m. and that he had three to four drinks before leaving at 11:00 p.m. The appellant explained that he had tried to get his girlfriend to come and get him, but that she was unable to and that because he was too tired to drive he went out to his truck to sleep for awhile. The appellant testified that the motor was on so that he could run the heater. He denied that the headlights were on when the officers arrived and testified that they were turned on by the police officers. The appellant refused to take a breath test.

■■ The appellant's first and third arguments are challenges to the sufficiency of the evidence. On appeal we are required to view the evidence in the light most favorable to the State and affirm if there is substantial evidence to support the verdict. *Holt* v. *State*, 15 Ark. App. 269, 692 S.W.2d 265 (1985). Substantial evidence is evidence which is of sufficient force and character that it will, with reasonable and material certainty and precision, compel a conclusion one way or the other; it must force or induce the mind to pass beyond a suspicion or conjecture. *Jones* v. *State*, 11 Ark. App. 129, 668 S.W.2d 30 (1984). The appellant first argues that he was not in actual control of the truck, and cites *Dowell* v. *State*, 283 Ark. 161, 671 S.W.2d 740 (1984), in support of his argument. In *Dowell* it was held that an occupant of a car was not shown to be in actual control of the car in which he was found asleep. An important factor in *Dowell* was that the keys to the vehicle were found on the seat at the time of arrest. *See Roberts* v. *State*, 287 Ark. 451, 701 S.W.2d 112 (1985). We disagree that *Dowell* is applicable to the appellant's case and are persuaded by the State's contention that the facts in this case more closely resemble those in *Roberts, supra,* and *Wiyott* v.

*State*, 284 Ark. 399, 683 S.W.2d 220 (1985). In *Wiyott*, the occupant of the car was found asleep, and when he was awakened by police officers, he reached for his keys which were in the ignition and then attempted to start the car. In the present case, not only were the keys in the ignition, but the truck's motor was running. As the Supreme Court noted in *Wiyott*, the person convicted could have awakened at any moment and started the car, and that he was in as much control of the vehicle as an intoxicated person can be. 284 Ark. at 402.

The appellant further contends that there are three methods by which it can be proven that a person is in physical control of a vehicle and that none of these methods were used in his trial. In *Azbill v. State*, 285 Ark. 98, 685 S.W.2d 162 (1985), the Supreme Court listed the methods: (1) observation by the officer; (2) evidence of intent to drive after the moment of arrest; or (3) a confession by the defendant that he was driving. However, *Azbill* is distinguishable because in that case the driver was found outside the car, not in it. The Court also stated in *Azbill* that control of the vehicle can by shown by circumstantial evidence. 285 Ark. at 101. Here the deputy directly observed the appellant in his truck, with the keys in the ignition and the motor running. We hold that the evidence was sufficient to establish that the appellant was in control of his vehicle.

For his third point for reversal, the appellant argues that the trial court erred in finding that he was intoxicated. The appellant refused to take a breath test so there was no evidence at trial as to the level of alcohol in the appellant's system. Arkansas Statutes Annotated § 75-2502(a) (Supp. 1985) states:

> "Intoxicated" means influenced or affected by the ingestion of alcohol, a controlled substance, or a combination thereof, to such a degree that the driver's reactions, motor skills, and judgment are substantially altered and the driver, therefore, constitutes a clear and substantial danger of physical injury or death to himself and other motorists or pedestrians.

Now codified at Ark. Code Ann. § 5-65-103 (1987).

We hold that there was sufficient evidence to find that the appellant was intoxicated. Deputy Rushing testified that

when the appellant got out of his truck he detected the odor of alcohol and the appellant stumbled getting out of the truck. In the field sobriety test, the appellant was asked to touch his nose and he missed and touched his moustache area. The appellant could not stand on one leg without using his arms to balance himself and he failed the eye gaze nystagmus test. Furthermore, the appellant admitted that he had been drinking. We do not find it significant that Deputy Rushing, on cross-examination, admitted that the appellant's actions could have been the result of having just been awakened from a deep sleep, because the officer also stated that he did not believe that was so in the appellant's case.

The appellant's second argument, which we are addressing last, concerns whether Deputy Rushing had a reasonable suspicion which justified his detaining the appellant. Arkansas Rules of Criminal Procedure Rule 3.1 allows an officer to "stop and detain any person who he reasonably suspects is committing, has committed, or is about to commit (1) a felony, or (2) a misdemeanor involving danger of forcible injury to persons or of appropriation or danger to property." It is the appellant's contention that Deputy Rushing did not have reasonable suspicion that the appellant was involved in criminal activity at the time he knocked on the window of the appellant's car. He asserts that it was not until he stepped out of his car that the suspicion arose that he was intoxicated.

We do not agree that this case involves the authority of a police officer to make an investigatory stop based on reasonable suspicion in accordance with A.R.Cr.P. Rule 3.1, but involves the question of the extent of permissible interruption a citizen must bear to accommodate a law officer who is investigating a crime under A.R.Cr.P. Rule 2.2. In *Baxter* v. *State*, 274 Ark. 539, 626 S.W.2d 935 (1982), the Arkansas Supreme Court stated:

> The practical necessities of law enforcement and the obvious fact that any person in society may approach any other person for purposes of requesting information make it clear the police have authority to approach civilians.

> There is nothing in the Constitution which prevents the police from addressing questions to any individual. However, the approach of a citizen pursuant to policeman's investigative law enforcement function must be reasonable

under the existent circumstances and requires a weighing of the government's interest for the intrusion against the individual's right to privacy and personal freedom. To be considered are the manner and intensity of the interference, the gravity of the crime involved, and the circumstances attending the encounter.

274 Ark. at 543 (citations omitted); *see also McDaniel* v. *State*, 20 Ark. App. 201, 726 S.W.2d 688 (1987). Arkansas Rules of Criminal Procedure Rule 2.2 outlines the authority of a police officer to request cooperation. Rule 2.2 provides in part:

> (a) A law enforcement officer may request any person to furnish information or otherwise cooperate in the investigation or prevention of crime. The officer may request the person to respond to questions, to appear at a police station, or to comply with any other reasonable request.

When we weigh the facts and circumstances in this case we find that the police officer's actions were reasonable. Deputy Rushing stated that he was in the area at 3:00 in the morning to check the businesses located there for possible break-ins. When he first saw the appellant's truck, he noticed that the motor was running and the headlights were on. He testified that he first thought that the bar had been broken into and went to check the building. Finding no evidence of a break-in, he went over to the appellant's truck, and that is when he first noticed the appellant laying in the front seat of the truck. Deputy Rushing said that he thought the appellant was "asleep or passed out." Although he did not see any blood or physical injuries, Deputy Rushing did not know if the appellant was ill, drunk, or merely asleep. Given these circumstances we believe that Deputy Rushing, as part of his community caretaking function, was justified in knocking on the appellant's window to question him and make an inquiry. *See Lipovich* v. *State*, 265 Ark. 55, 576 S.W.2d 720 (1979).

Affirmed.

COULSON and JENNINGS, JJ., agree.