STATE of Arkansas *v.* William P. McFADDEN

CR 96-1058                                            938 S.W.2d 797

Supreme Court of Arkansas
Opinion delivered January 13, 1997

*Winston Bryant,* Att'y Gen., by: *Brad Newman,* Asst. Att'y Gen., for appellant.

*Tom Thompson,* for appellee.

DONALD L. CORBIN, Justice. This is an interlocutory appeal by the State of Arkansas of the order entered by the Sharp County Circuit Court granting Appellee William P. McFadden's motion to suppress physical evidence in his criminal case. Our jurisdiction is pursuant to Ark. Sup. Ct. R. 1-2(a)(11) and Ark. R. App. P.—Crim. R. 3. On appeal, Appellant argues that the trial court erred in suppressing the evidence pursuant to A.R.Cr.P. Rule 3.1 because the stop of the vehicle that Appellee was driving was proper pursuant A.R.Cr.P. Rule 2.2.

## I.   Facts and Procedural History

During the suppression hearing below, Ernie Rose, Chief of Police of Hardy, Arkansas, testified to the following facts. On April 4, 1994, Chief Rose received a report that a juvenile girl was missing. The girl's parents informed Chief Rose that she was probably with Shane Shipp, who drove a little red Nissan car, and that she had been seeing Shipp against her parents' wishes. That night Chief Rose and the girl's father, who was riding along with the officer, spotted the Shipp vehicle and noticed that there were two persons in the car. Chief Rose pursued the vehicle, with his blue lights flashing, and stopped the vehicle shortly thereafter. Shipp was seated in the passenger seat and Appellee McFadden was driving the car. When he approached the vehicle, Chief Rose observed a black shotgun standing upright behind the driver's seat. When Chief Rose informed Appellee and Shipp that he had stopped them to inquire about the whereabouts of the juvenile girl, Shipp told the officer that he had not seen the girl for a few days. Chief Rose then requested permission to search Shipp's

home, which was nearby, for the missing juvenile girl and Shipp consented.

After completing the search, Chief Rose released the two men, but seized the shotgun from the car because the gun had a pistol-type grip and appeared to him to have been sawed-off in violation of Arkansas law. Appellee informed Chief Rose that the shotgun was his, and that the officer should be careful with it because it was loaded. Chief Rose took custody of the weapon, and upon putting the shotgun into the evidence room, another officer observed a package down in the butt of the shotgun. When the officer pulled it out, he observed that the package contained a white powdery substance. Chief Rose sent the package to the Arkansas State Crime Laboratory for analysis; he subsequently received a report stating that the substance was methamphetamine. The shotgun itself was later determined not to be illegal in any respect. After receiving the drug-analysis report, Chief Rose obtained an arrest warrant for Appellee, resulting in felony charges of simultaneous possession of drugs and firearms, a Class Y felony, and possession of methamphetamine, a Class C felony.

Appellee filed a motion to suppress the evidence on the ground that the stop, search, and seizure violated his rights under the Fourth Amendment to the United States Constitution. Specifically, Appellee argued below that the evidence should be suppressed because Chief Rose did not articulate any probable cause for stopping the vehicle, nor did he articulate any probable cause for seizing the weapon.

The only person to testify during the suppression hearing was Chief Rose. On direct examination, Chief Rose stated that he stopped the car because he was looking for the juvenile girl. On cross-examination, Chief Rose stated that at the time he initially observed and stopped the car, he did not believe that a felony had been committed, was being committed, or was about to be committed. Chief Rose stated further that although he did have concerns about the safety of the juvenile girl, the only crime he would have believed may have been committed was endanger-

ment of a minor. Chief Rose again reiterated that he was investi-gating a missing juvenile, something he did routinely.

The State argued below, as it does on appeal, that the stop of the vehicle was proper and valid pursuant to A.R.Cr.P. Rule 2.2, which allows officers to request any person to furnish information or otherwise cooperate in the investigation or prevention of crime. Appellee argued that the stop amounted to an unlawful detainment pursuant to A.R.Cr.P. Rule 3.1. The trial court agreed with Appellee and granted his motion to suppress both the shotgun and the methamphetamine. We affirm.

## II. Validity of the Stop

In reviewing a trial court's decision granting a defend-ant's motion to suppress evidence, we make an independent deter-mination based on the totality of the circumstances and reverse the trial court's decision only if it is clearly against the preponderance of the evidence. *State v. Martinez*, 306 Ark. 353, 811 S.W.2d 319 (1991); *State v. Blevins*, 304 Ark. 388, 802 S.W.2d 465 (1991).

Appellant argues that the initial stop of the car driven by Appellee was proper under A.R.Cr.P. Rule 2.2 as a request for information concerning a criminal investigation. We disagree. Rule 2.2(a) provides:

> A law enforcement officer may request any person to furnish information or otherwise cooperate in the investigation or pre-vention of crime. The officer may request the person to respond to questions, to appear at a police station, or to comply with any other reasonable request.

This court has interpreted Rule 2.2 to provide that an officer may approach a citizen much in the same way a citizen may approach another citizen and request aid or information. *See Thompson v. State*, 303 Ark. 407, 797 S.W.2d 450 (1990); *Baxter v. State*, 274 Ark. 539, 626 S.W.2d 935, *cert. denied*, 457 U.S. 1118 (1982). Following that rationale, this court stated in *Thompson*:

> Not all personal intercourse between policemen and citizens involves "seizures" of persons under the fourth amendment. *See Terry v. Ohio*, 392 U.S. 1 (1967). A "seizure" occurs when the

officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen. *Id.*

Police-citizen encounters have been classified into three categories. *See U.S. v. Hernandez*, 854 F.2d 295 (8th Cir. 1988). The first and least intrusive category is when an officer merely approaches an individual on a street and asks if he is willing to answer some questions. Because the encounter is in a public place and is consensual, it does not constitute a "seizure" within the meaning of the fourth amendment. *Id.* The second police encounter is when the officer may justifiably restrain an individual for a short period of time if they have an "articulable suspicion" that the person has committed or is about to commit a crime. *Id.* The initially consensual encounter is transformed into a seizure when, considering all the circumstances, a reasonable person would believe that he is not free to leave. The final category is the full-scale arrest, which must be based on probable cause. *Id.*

*Thompson*, 303 Ark. at 409, 797 S.W.2d at 451-52. In that case, this court went on to hold that Rule 2.2(a) provides the "authority for a police officer to act in this type of nonseizure encounter," referring to the first category of police-citizen encounters. *Id.* at 410, 797 S.W.2d at 452.

In determining that a balancing test must be used in these situations, this court stated in *Baxter*:

There is nothing in the Constitution which prevents the police from addressing questions to any individual. *See Terry v. Ohio, supra.* However, the approach of a citizen pursuant to a policeman's investigative law enforcement function must be reasonable under the existent circumstances and requires a weighing of the government's interest for the intrusion against the individual's right to privacy and personal freedom. To be considered are the manner and intensity of the interference, the gravity of the crime involved, and the circumstances attending the encounter. *People v. De Bour*, 40 N.Y.2d 210, 352 N.E.2d 562 (1976).

*Id.*, 274 Ark. at 543, 626 S.W.2d at 937.

In *Meadows v. State*, 269 Ark. 380, 602 S.W.2d 636 (1980), this court stated that in order for an officer's actions to be valid pursuant to Rule 2.2, "the officer's request for information

must be in aid of the investigation or prevention of crime." *Id.* at 383, 602 S.W.2d at 638. In sum, our case law has consistently held that Rule 2.2 authorizes an officer to request information or cooperation from citizens provided the approach of the citizen does not rise to the level of being a seizure and provided that the information or cooperation sought by the officer is in aid of the investigation or prevention of crime. The facts presented below indicate to us that the officer's approach of Appellee was neither a nonseizure encounter nor done for the purpose of aiding in the investigation or prevention of a crime.

From the testimony elicited during the suppression hearing, we are not convinced that Chief Rose was investigating any particular crime; he was merely looking for a missing juvenile. There was no testimony presented indicating that the juvenile girl may have been kidnapped or, if she was in fact with Shane Shipp, that she was with him against her own will. Chief Rose testified only that the juvenile girl had been seeing Shipp against her parents' will — not against her will.

On cross-examination, Chief Rose appeared to waver on the issue of whether he suspected that the occupants of the vehicle were involved in the commission of a crime. At first, Chief Rose stated that it was common knowledge that the girl had been seen in the company of Shipp on previous occasions, and he admitted that while he was pursuing the vehicle, he had no reason to believe that a felony was being committed. Chief Rose then stated that he was concerned for the girl's safety and that the only crime that may have been committed was one of endangering a minor. Subsequent to that, Chief Rose again admitted that at the time he was pursuing the vehicle, he had no reason to believe that any force was being used or that any crime was being committed against the girl. The credibility of the witness in this instance was for the trial court to weigh and assess, and the trial court's findings of fact shall not be set aside unless they are clearly erroneous. *Shibley v. State*, 324 Ark. 212, 920 S.W.2d 10 (1996); *Mills v. State*, 322 Ark. 647, 910 S.W.2d 682 (1995). Based upon the aforementioned testimony of Chief Rose, we cannot say the trial court's ruling on the suppression issue was clearly erroneous.

Furthermore, Chief Rose's approach of Appellee and Shipp cannot be characterized as anything other than a seizure of the two men; this was not a situation where the officer merely approached two men on a public street and asked if they would provide information. Indeed, Chief Rose testified that he pursued the Shipp vehicle with his blue lights flashing until the vehicle pulled to the side of the road. He testified further that he had the men step out of the vehicle and accompany him to Shipp's home so that he could search the premises for the missing girl. We believe that this "approach" of Appellee. went far beyond the sort of encounter authorized by Rule 2.2; it became a seizure such that a reasonable person in that situation would not have believed he was free to leave. *Thompson*, 303 Ark. 407, 797 S.W.2d 450. Applying the balancing test provided in *Baxter*, 274 Ark. 539, 626 S.W.2d 935, it is clear that the intrusion into Appellee's privacy was unreasonable when weighed against the governmental interest of locating a juvenile girl, where no allegations of criminal activity were made.

In support of its contention, Appellant cites our decisions in *Baxter*, 274 Ark. 539, 626 S.W.2d 935, and *Blevins v. State*, 310 Ark. 538, 837 S.W.2d 879 (1992). Those cases are easily distinguishable from this case based upon the facts presented in each instance. In both of the above-cited cases, the officer was responding to reports concerning robberies which had just occurred. In both cases, this court upheld the officers' initial stop and approach of the appellants on the bases that both appellants were near the scene of the robberies around the time the crimes had been committed and could have been witnesses to the crimes, and that both cases involved the investigation of serious criminal offenses. In the present case, there simply was no crime being investigated which would entitle the officer to stop and detain Appellee, pursuant to either Rule 2.2 or Rule 3.1. Based upon all of the above reasons, we conclude the trial court's ruling was not clearly erroneous.

We need not address the second issue raised, that the subsequent seizure of the shotgun was proper pursuant to A.R.Cr.P. Rule 14.4, as our decision that the initial stop of the vehicle was improper is dispositive of the second issue.

Affirmed.

THORNTON, J., concurs.

RAY THORNTON, Justice, concurring. I agree with the majority decision affirming the decision of the trial court, but only because the trial court's decision is not clearly against the preponderance of the evidence.

This Court should not base its decision upon an interpretation of Rule 2.2(a) that could have a chilling effect upon the exercise of discretion by an officer charged with preventing and deterring criminal activities. Preventing the endangerment of a child is, in my view, a valid reason for a lawful stop of a vehicle when it is reasonably believed that the occupants of the vehicle possess information about the missing child. Police officers should be assured that stopping a vehicle belonging to friends or family of a missing child to ask for information about the child is not prohibited by this decision.

Here, there was substantial evidence before the trial court that the missing juvenile was not in danger and that the officer did not consider that a crime had been committed. While I might have reached a decision contrary to the trial court on the basis of my own interpretation of the evidence, I recognize that the trial court was able to listen to the testimony, observe the demeanor of the witnesses, evaluate their credibility, and conclude that the vehicle was not lawfully stopped.

In these circumstances, I would affirm, but only because I could not find that the trial court's decision was clearly against the preponderance of the evidence. We should recognize that another trial court in similar factual circumstances might decide a lawful stop was permitted, and I believe that decision should also be supported on review unless it was clearly against the preponderance of the evidence.

I concur.