Jeffrey Michael KING v. STATE of Arkansas

CA CR 01-446                                72 S.W.3d 109

Court of Appeals of Arkansas
Division I
Opinion delivered April 3, 2002

*Orr, Scholtens, Willhite & Averitt, PCC,* by: *M. Scott Willhite,* for appellant.

*Mark Pryor,* Att'y Gen., by: *Misty Wilson Borkowski,* Ass't Att'y Gen., for appellee.

JOHN B. ROBBINS, Judge. Appellant Jeffrey King entered a conditional plea of guilty to the crime of possession of methamphetamine with intent to deliver, subsequent to a search of his person that revealed 3.191 grams of methamphetamine. He was sentenced to ten years in prison, a $150 fine, and a six-month driver's license suspension. Appellant reserved his right to appeal the denial of his motion to suppress pursuant to Ark. R. Crim. P. 24.3(b) (2001). We affirm the denial of his motion to suppress.

■ ■ On appeal from a trial court's ruling on a motion to suppress evidence, this court makes an independent determination based on the totality of the circumstances and reverses only if the trial court's ruling was clearly against the preponderance of the

evidence. *State v. Blevins*, 304 Ark. 388, 802 S.W.2d 465 (1991); *Edwards v. State*, 300 Ark. 4, 775 S.W.2d 900 (1989). Deference is given to the superior position of the trial judge on issues of the credibility of witnesses. *Grant v. State*, 267 Ark. 50, 589 S.W.2d 11 (1979). As the United States Supreme Court has indicated, the Fourth Amendment does not forbid all searches and seizures but only "unreasonable searches and seizures." *Terry v. Ohio*, 392 U.S. 1, 9 (1968). Freely given consent to search must be proven by clear and convincing evidence. *Norris v. State*, 338 Ark. 397, 993 S.W.2d 918 (1999).

The facts as developed before the White County Circuit Court at the suppression hearing were that on May 8, 2000, at approximately 1:00 a.m., police officers from the city of Bradford, Arkansas, were looking for Joe Robinson, a suspect in a hit-and-run accident who had an outstanding felony warrant. Robinson was observed running toward appellant's trailer from an abandoned house, and officers approached the trailer, seeing fresh footprints in the dew on the wooden steps leading up to the trailer door. Appellant answered their knocks at the door and granted consent for the officers to look for Robinson in his trailer. At no time did appellant contest that he granted the officers permission to look for this man inside his trailer. Investigator Hydron, from the White County Sheriff's Office, was present in the house.

The other officers went in search of Robinson while Hydron stayed with appellant. While talking to appellant about Robinson and Robinson's whereabouts, Hydron thought that appellant was acting nervous. The police had previously received information, which was relayed to Hydron, that appellant and Vickie Sterling were selling methamphetamine from the trailer. Hydron repeatedly asked appellant to take his hands out of his pockets, which appellant finally did. However, appellant was fidgeting, he would cross his arms, and then his hand would return to his right front pocket. Due to appellant's behavior, Hydron recited the *Miranda* rights to appellant and then asked if he understood his rights, and appellant said that he did. After being Mirandized, appellant was asked if Robinson was hiding in the trailer, to which appellant replied that he had not seen Robinson in two or three days. Hydron then asked appellant if he had "any meth, guns, or

whatever" in his pockets, and appellant replied that he had "a little meth." Hydron asked if appellant wanted to get it or if appellant wanted Hydron to get it. Appellant raised his arms and told Hydron to get it. Methamphetamine was found in appellant's right front pants pocket, and appellant was arrested. A motion to suppress followed, and a hearing on this motion was held.

The trial judge found that appellant voluntarily consented to the officers' entry into his home, that the officers were entitled to ask for cooperation in their search for Robinson, that the officers' opinion of appellant's nervousness and appellant's resistance to keeping his hands out of his pockets in contravention of a direction by the officer was credible, that Hydron administered *Miranda* warnings, and that appellant voluntarily admitted to possessing methamphetamine leading to his arrest. The trial court determined that appellant was not seized pursuant to reasonable suspicion of crime under Ark. R. Crim. P. 3.1. Based upon this assessment of the facts, the trial judge denied the motion to suppress the methamphetamine.

Appellant concedes, as he did at the suppression hearing, that he granted consent to the officers to enter the trailer and look for Robinson. Thus, the initial encounter was lawful. Appellant's argument is that the investigator exceeded the scope of that consent when he began questioning appellant about possessing drugs or guns. More specifically, appellant argues that his constitutional rights were violated by the officers "wrongfully detaining him, by placing him in custody with no just or probable cause, by exceeding the scope of their authority to search, by refusing to leave his residence when consent to search was withdrawn, and by willfully violating his right to privacy." He argues primarily that the search violated Ark. R. Crim. P. 3.1.[1] He also argues that the search

---

[1] Arkansas Rule of Criminal Procedure 3.1 (2001) provides:

A law enforcement officer lawfully present in any place may, in the performance of his duties, stop and detain any person who he reasonably suspects is committing, has committed, or is about to commit (1) a felony, or (2) a misdemeanor involving danger of forcible injury to persons or of appropriation of or damage to property, if such action is reasonably necessary either to obtain or verify the identification of the person or to determine the lawfulness of his conduct. An officer acting under this rule may require the person to remain in or near such place in the officer's presence

violated Ark. R. Crim. P. 11.3 and 11.5, which govern the scope of consent and withdrawal of consent.

The State responds that consent to enter the residence is irrelevant because, pursuant to Ark. R. Crim. P. 2.2 (2001), a law enforcement officer may request any person to furnish information or otherwise cooperate in the investigation or prevention of crime. The State argues alternatively that if appellant was seized, this seizure was permissible because of appellant's suspicious behavior, which gave rise to reasonable suspicion that appellant was committing a felony pursuant to Ark. R. Crim. P. 3.1. The State notes that the demeanor of a suspect and the suspect's apparent effort to conceal an article are factors to be considered in determining whether an officer has a reasonable suspicion. Ark. Code Ann. § 16-81-203 (1987).

We agree with appellant that there were insufficient facts upon which to form a reasonable suspicion that appellant had committed or was about to commit a crime in order to validate the interaction under Ark. R. Crim. P. 3.1. Instead, the resolution of the present appeal requires that we address the extent of permissible interruption that a citizen must bear to accommodate a law officer who is investigating a crime under Ark. R. Crim. P. 2.2. In *Baxter v. State*, 274 Ark. 539, 543, 626 S.W.2d 935, 937 (1982), our supreme court stated:

> The practical necessities of law enforcement and the obvious fact that any person in society may approach any other person for purposes of requesting information make it clear the police have authority to approach civilians.
>
> There is nothing in the Constitution which prevents the police from addressing questions to any individual. However, the approach of a citizen pursuant to policeman's investigative law enforcement function must be reasonable under the existent circumstances and requires a weighing of the government's interest for the intrusion against the individual's right to privacy and per-

---

for a period of not more than fifteen (15) minutes or for such time as is reasonable under the circumstances. At the end of such period the person detained shall be released without further restraint, or arrested and charged with an offense.

> sonal freedom. To be considered are the manner and intensity of the interference, the gravity of the crime involved, and the circumstances attending the encounter. (Citations omitted.)

*See also Blakemore v. State,* 25 Ark. App. 335, 758 S.W.2d 425 (1988); *McDaniel v. State,* 20 Ark. App. 201, 726 S.W.2d 688 (1987). An encounter under Ark. R. Crim. P. 2.2 is permissible only if the information or cooperation sought is in aid of an investigation or the prevention of a particular crime. *Hammons v. State,* 327 Ark. 520, 940 S.W.2d 424 (1997); *State v. McFadden,* 327 Ark. 16, 938 S.W.2d 797 (1997); *Thompson v. State,* 303 Ark. 407, 797 S.W.2d 450 (1990); *Baxter v. State, supra; Meadows v. State,* 296 Ark. 380, 602 S.W.2d 636 (1980) .[2] The officer undeniably thought that Robinson was hiding in appellant's trailer, and it was for this reason that the officers approached appellant in the first place. Not all personal intercourse between police officers and citizens involves "seizures" of persons under the Fourth Amendment. *See Terry v. Ohio,* 392 U.S. 1 (1968). A "seizure" occurs when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen. *Id.*

It has been held that in the context of consensual public encounters, even when officers have no basis for suspecting a particular individual, they may generally ask the individual questions, ask to examine identification, and request consent to search, provided they do not convey a message that compliance with their requests is required. *See Florida v. Bostick,* 501 U.S. 429 (1991). In the present appeal, Hydron made it clear that appellant did not have to answer any further queries when he orally rendered

---

[2] For example, in *Hammons v. State, supra,* the supreme court held that it was permissible under Rule 2.2 for an officer to approach the driver of a parked car in the course of investigating a tip from a confidential informant that the driver of a black Corvette was selling drugs behind the Old Town Tavern. Likewise, in *Baxter v. State, supra,* the supreme court held that an officer had not violated Rule 2.2 when he asked a driver about a theft from a nearby jewelry store that occurred only ten minutes earlier. In both of these cases, the initial encounter, which was not a seizure under the Fourth Amendment, was permissible under Ark. R. Crim. P. 2.2 because the officer was seeking assistance in the investigation of a particular crime.

*Miranda* warnings to appellant. Thereafter, appellant answered one question about Robinson and voluntarily responded to a question about possession of drugs. Appellant's freely given statement in which he admitted to having "a little meth" created probable cause to seize the contraband and arrest appellant.

After reviewing the totality of the circumstances presented by these unique facts, we cannot say that the trial court's denial of appellant's motion to suppress was clearly erroneous.

Affirmed.

CRABTREE, J., agrees.

ROAF, J., concurs.

ANDREE LAYTON ROAF, Judge, concurring. I concur in affirming this case, but write separately to emphasize that the giving of *Miranda* warnings, without probable cause or even reasonable suspicion to believe that an offense has occurred, will not cure the taint of an illegal arrest. *See Rose v. State*, 294 Ark. 279, 742 S.W.2d 901 (1988)(citing *Wong Sun v. United States*, 371 U.S. 471 (1963)); *Roderick v. State*, 288 Ark. 360, 705 S.W.2d 433 (1986)(citing *Brown v. Illinois*, 422 U.S. 590 (1975)). This is because *Miranda* warnings alone do not sufficiently deter Fourth Amendment violations. *Brown v. Illinois, supra.* I agree with the majority that there were insufficient facts in this instance from which Investigator Phillip Hydron could form a reasonable suspicion that appellant Jeffrey King had committed or was about to commit a crime. The issue thus to be resolved is whether, despite the officers' consensual entry into King's home for the alleged purpose of searching for Joe Robinson, a man with an outstanding warrant for a hit-and-run accident, King was "seized" by Investigator Hydron at the time he made the incriminating statement that he had methamphetamine in his pocket.

The evidence in this regard is somewhat sketchy. Seven or eight officers entered King's residence to conduct the search for Robinson. While most of the officers commenced the search,

King retreated to his bedroom, followed by Hydron. Hydron had been advised in advance of the entry by another officer that an informant had reported that King was selling methamphetamine out of his trailer. According to Hydron's testimony, he "went to the back and stayed with Mr. King" in order to find out more about Robinson's location. King also testified that Hydron immediately followed him to his bedroom and remained with him the entire time the search was being conducted, questioning him for about fifteen minutes or so before giving him his *Miranda* rights. Although King's testimony about Hydron's interrogation differed markedly from Hydron's, King did not state that he felt that he was under arrest or detained by Hydron until at the point Hydron read his rights to him. The majority finds that this sequence of events is a permissible encounter pursuant to Ark. R. Crim. P. 2.2, as a request to furnish information in the "investigation of crime."

Clearly, the focus of Hydron's attention soon shifted from inquiry about Robinson's whereabouts to King himself. However, I can find no authority that supports the finding that the giving of Miranda rights in the unique circumstances of this case constitutes an illegal detention, even though *Miranda* is intended for use when custodial interrogations occur. *See Godbold v. State*, 336 Ark. 251, 983 S.W.2d 939 (1999)(holding that *Miranda* warnings are necessary when statement is made during a custodial interrogation). King makes a reasoned and persuasive argument on appeal that he was "detained in his own residence," and it is surely credible and understandable that a person suddenly read his *Miranda* rights may believe that he is not at that point free to leave, even in his own home. Unfortunately, King provides us with no authority to support such a holding, and in the absence of it, we are compelled to affirm.