SLIP OPINION

# SUPREME COURT OF ARKANSAS

**No.** CR–16–413

| | |
|---|---|
| AARON MICHAEL LEWIS[1]<br><br>APPELLANT<br><br><br>V.<br><br><br>STATE OF ARKANSAS<br><br>APPELLEE | **Opinion Delivered:** June 8, 2017<br><br><br>APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT [NO. 60CR-14-3928]<br><br><br>HONORABLE HERBERT THOMAS WRIGHT, JUDGE<br><br><br><br>AFFIRMED ON DIRECT APPEAL; DISMISSED ON CROSS-APPEAL. |

**JOHN DAN KEMP, Chief Justice**

Appellant Aaron Michael Lewis[1] appeals an order of the Pulaski County Circuit Court convicting him of capital murder and kidnapping and sentencing him as a habitual offender to terms of life imprisonment without parole and life, respectively. For reversal, Lewis argues that the circuit court erred in denying his motions to suppress on five separate grounds. The State filed a cross-appeal alleging that the circuit court erred in granting Lewis's motion to suppress evidence seized pursuant to two search warrants. We affirm the circuit court's denial of his motions to suppress, and we dismiss the cross-appeal.

---

[1]     The record and the briefs contain pleadings in which Lewis's name is spelled "Aaron" and "Arron." In the judgment and commitment order, his name is spelled "Aaron," which is how it will be spelled in this opinion.

I. *Facts*

On September 25, 2014, Carl Carter reported that his wife, Beverly ("Carter"), a real estate agent, was missing. He stated that Carter had planned to show a house in Scott, but when she had not returned home by 9:00 that evening, he became worried and drove to the Scott residence. There, he saw Carter's vehicle in the driveway and discovered that she had left her purse inside the car. Officers from the Pulaski County Sheriff's Department were dispatched to the Scott residence, but they did not find Carter.

Crystal Lowery, Lewis's wife, testified that she and Lewis had devised a scheme whereby they planned to target a victim who was married, who worked alone, and who allegedly had $100,000 from whom they would seek a ransom. Lewis and Lowery found Carter's Facebook page online, discovered that she was a real estate agent, and believed that she was a "rich broker." They called Carter, identified themselves as Crystal and Steve Adams, and asked Carter to show them a home in a remote location. Posing as Steve Adams, Lewis met Carter at the Scott residence while Lowery went to work. Lowery testified that Lewis later texted her a picture of Carter, who was bound with green tape in the trunk of Lewis's car. Lowery stated that Lewis planned to take Carter to his place of employment, a concrete plant in Cabot, but that "he didn't feel secure in leaving her there." When Lowery came home, she learned that Lewis had locked Carter in the bedroom. Lewis explained that he had Carter's debit-card PIN but that her purse was still at the Scott location. Lewis asked Lowery to "keep an eye on [Carter]" while he retrieved her purse. When he returned, Lewis told Lowery that "the cops were already there at the house" and that the plan had changed. According to Lowery, Lewis left with Carter, killed her, and left her body near

the cement plant. The next morning, Lewis and Lowery purchased a shovel and buried Carter's body in a shallow grave at the cement-plant site. Dr. Charles Kokes of the Arkansas State Crime Lab testified that Carter's cause of death was asphyxia due to an external-airway obstruction from a duct-tape mask on her face.

Carter's phone records indicated that she had placed a call to an unidentified cell-phone number that was returned to TextMe, Inc., a company that assigns phone numbers and provides smartphone users with free text and voice messaging. Pursuant to an exigent-circumstances request, TextMe provided a report to the Pulaski County Sheriff's Office stating that the unidentified number on Carter's phone belonged to Lowery, who lived in Jacksonville.

On September 28, 2014, Lieutenant Mark Swaggerty conducted surveillance on Lowery's home, where he observed Lewis get into a black Ford Fusion and drive away. Both Lewis and the vehicle matched a description of a person and a car seen at the Scott residence when Carter was present. Lieutenant Swaggerty followed Lewis for approximately three miles. As Lewis drove around a curve, he lost control of the vehicle and crashed into a ditch. Lewis's car landed on the passenger side in a concrete culvert. The lieutenant approached Lewis, who told the officer that he needed to go to the hospital. Emergency personnel arrived and examined Lewis. When Lewis was inside the ambulance, Lieutenant Swaggerty asked for his telephone number. Lewis responded with a number that was one digit off from the number that was connected to the text messages received by the victim via the TextMe app. When the lieutenant asked Lewis a second time, he gave the correct number. The lieutenant then seized Lewis's phone. According to Swaggerty, Lewis had

not been taken into custody at that time. EMTs transported Lewis to the hospital, but he left the hospital during testing that day without notifying any medical staff. Police subsequently apprehended Lewis on September 29, 2014.

Officers returned to the scene of the accident, overturned the vehicle, performed an inventory search of the interior passenger area, and completed a vehicle-search report. Sergeant Shane Hastings signed the report, which indicated that the trunk had not been "opened or inventoried." The investigators surrendered the vehicle to a tow service, which transported the vehicle to the Pulaski County Sheriff's Office where it was locked and secured. Officers obtained a search warrant and found numerous items, including hair fiber, in the trunk of Lewis's car.

Police officers arrested Lewis, who gave two custodial statements. Before trial, Lewis filed four motions to suppress. First, Lewis filed a motion to suppress his custodial statements made to officers of the Pulaski County Sheriff's Department. In his motion, he alleged that his arrest was illegal and that any statements made to police were the fruits of an illegal arrest. Second, Lewis filed a motion to suppress the physical evidence from his vehicle, alleging that officers had illegally detained him and conducted a search and seizure of him and his property. Third, he filed a motion to suppress evidence "based on [the] overreaching use of [a] prosecutor's subpoena power," stating that, "[i]n the course of the investigation, prosecutor subpoenas were sent to multiple companies, including AT&T and Google." In his motion, Lewis claimed that these subpoenas should have been suppressed because they were issued "for the law enforcement investigation and not for the prosecutor's investigation." Finally, Lewis filed a motion to suppress a voice recording of the victim on



his cell phone based on the Arkansas Constitution, *United States v. Patane*, 542 U.S. 630 (2004), and the Arkansas Rules of Criminal Procedure. The State responded that the circuit court properly denied each of these motions to suppress.

The circuit court entered an order granting *inter alia* Lewis's motion to suppress on his first statement, which he made after he invoked his right to counsel, as the product of an illegal interrogation. The circuit court admitted the voice recording on Lewis's phone and the phone itself that the officer seized after Lewis's car accident. The circuit court denied Lewis's motion to suppress his second statement, finding that he had reinitiated contact with law enforcement, and admitted certain items found in Lewis's car pursuant to the on-site inventory search but suppressed other items based on an overbroad warrant. The circuit court found that Lewis lacked standing to challenge the prosecutor subpoenas.

Lewis's case proceeded to trial. A Pulaski County jury found Lewis guilty of capital murder and kidnapping and sentenced him to life without parole on the murder charge and a life sentence on the kidnapping charge. Lewis timely filed his notice of appeal. The circuit court filed an amended sentencing order. The State filed its notice of cross-appeal.

## II. *Motions to Suppress*

### A. Cell Phone

For the first point on appeal, Lewis argues that the circuit court erred in admitting Lewis's cell phone. Specifically, Lewis contends that the police officer illegally seized Lewis's phone as the product of an illegal encounter and that it should have been suppressed pursuant to Rule 2.2 of the Arkansas Rules of Criminal Procedure. The State responds that the circuit court correctly found that the police officer encounter was proper under Rule

2.2 and that the phone was properly seized under Rule 10.2 of the Arkansas Rules of Criminal Procedure.

Police-citizen encounters have been classified into three categories. The first category is contemplated by Rule 2.2 of the Arkansas Rules of Criminal Procedure. The authority for a police officer to act in a nonseizure encounter is recognized in Rule 2.2(a), which provides,

> A law enforcement officer may request any person to furnish information or otherwise cooperate in the investigation or prevention of crime. The officer may request the person to respond to questions, to appear at a police station, or to comply with any other reasonable request.

This type of nonseizure encounter occurs when an officer merely approaches an individual on a street and asks if he is willing to answer some questions. *Thompson v. State*, 303 Ark. 407, 797 S.W.2d 450 (1990). This encounter is consensual and does not constitute a seizure. *Scott v. State*, 347 Ark. 767, 67 S.W.3d 567 (2002). A seizure of a person occurs when an officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen. *Id.*, 67 S.W.3d 567. The initially consensual encounter is transformed into a seizure when, considering all the circumstances, a reasonable person would believe that he is not free to leave. *Id.*, 67 S.W.3d 567. The second category is contemplated by Rule 3.1 of the Arkansas Rules of Criminal Procedure. *Thompson*, 303 Ark. 407, 797 S.W.2d 450. This second type of encounter occurs when the officer justifiably restrains an individual for a short period of time because the officer has a reasonable, articulable suspicion that the person has committed or is about to commit a crime. *Thompson*, 303 Ark. 407, 797 S.W.2d 450. The final category is the full-scale arrest, which must be based on probable cause. *Scott*, 347 Ark. 767, 67 S.W.3d 567.

SLIP OPINION

A nonseizure encounter pursuant to Rule 2.2 is permissible "only if the information or cooperation sought is in aid of an investigation or the prevention of a particular crime." *Stewart v. State*, 332 Ark. 138, 146, 964 S.W.2d 793, 797 (1998). This court has stated that the approach of a citizen pursuant to a police officer's investigative law-enforcement function must be reasonable under the existent circumstances and requires a weighing of the government's interest for the intrusion against the individual's right to privacy and personal freedom. *Baxter v. State*, 274 Ark. 539, 626 S.W.2d 935 (1982). To be considered are the manner and intensity of the interference, the gravity of the crime involved, and the circumstances attending the encounter. *Id.*, 626 S.W.2d 935.

Lewis cites *State v. McFadden*, 327 Ark. 16, 938 S.W.2d 797 (1997), in support of his argument to reverse the circuit court's ruling. In *McFadden*, this court affirmed the circuit court's grant of the defendant's motion to suppress, holding that the officer's pursuit with blue lights flashing, a stop of the defendant's vehicle, and a request for the defendant to accompany the officer to another person's home "went far beyond the sort of encounter authorized by Rule 2.2; it became a seizure such that a reasonable person in that situation would not have believed he was free to leave." *McFadden*, 327 Ark. at 23, 938 S.W.2d at 800. We concluded that "this was not a situation where the officer merely approached two men on a public street and asked if they would provide information." *Id.*, 938 S.W.2d at 800; *cf. Thompson v. State*, 303 Ark. at 410, 797 S.W.2d at 452 (affirming circuit court's denial of suppression motion under Rule 2.2 because no seizure took place when the officer did not restrain the liberty of the driver or show authority by exhibiting a weapon or ordering the driver out of the vehicle).

Lewis's reliance on *McFadden* is misplaced because the nonseizure encounter was permissible under Rule 2.2. Here, the circuit court denied Lewis's motion to suppress, ruled that the officer's questioning was proper under Rule 2.2, and found that the cell phone had been properly seized pursuant Rule 10.2. Specifically, the circuit court provided the following rationale as the basis for its ruling:

> Swaggerty was not approaching a random individual standing on a street corner "in the wrong place at the wrong time." There was a specific investigation going on in which the defendant was considered a person of interest. Furthermore, the defendant had been involved in a vehicle accident, and to suggest that the lieutenant's approach of the defendant, injured and climbing out of an upended vehicle, was analogous to stopping and requesting information of someone standing on the street is unconvincing. . . . Knowing that an individual matching the defendant's description was seen in a vehicle matching the defendant's near the victim's vehicle around the time of her disappearance, Swaggerty also had reasonable suspicion to think that questioning the defendant might assist in the investigation or prevention of crime. . . . The facts known to Swaggerty in the present case, combined with the absence of a custodial seizure or stop of the defendant, and the defendant's non–coerced volunteering of a phone number known to the investigators distinguishes it from any case cited by the defendant. . . . Once Swaggerty had initiated law contact and questioning of the defendant under Rule 2.2, his seizure of the defendant's phone was proper under Arkansas Rule of Criminal Procedure 10.2, which states that "evidence of other information except privileged information concerning the commission of a criminal offense or other violation of law" are subject to seizure.

We agree with the circuit court's ruling. Swaggerty knew that Carter had been missing for three days. He knew that Lewis and his car matched the description of the man and vehicle seen at the home where Carter had disappeared. He also knew that the TextMe account had been registered to Lowery. After Lewis was involved in the car accident, the lieutenant approached him to determine whether he needed medical assistance and to inquire about his cell phone. The lieutenant's request that Lewis respond to questions about Carter's disappearance comports with the requirements of Rule 2.2. Thus, we hold that the circuit court properly denied his motion to suppress.

B. Voice Recording

For the second point on appeal, Lewis argues that the circuit court abused its discretion in admitting into evidence a recording of Carter's voice on his cell phone that Lewis played for law enforcement during his first custodial statement. Lewis contends that the circuit court mistakenly relied on *United States v. Patane*, 542 U.S. 630 (2004), in denying his motion to suppress the recorded statement and urges this court to reject the Supreme Court's holding in *Patane* as inconsistent with article 2 of the Arkansas Constitution, which provides for the right against self-incrimination and for the right to counsel.

The following facts are relevant to this court's analysis. The circuit court suppressed Lewis's first statement and found that Lewis had invoked his right to counsel before making his statement to police. During that statement, the officers provided Lewis with his cell phone that had been seized. To the interrogating officers, Lewis stated,

> I'm gonna show you something.  Show you something while you're sitting right there and while he's on the other side.  Well, actually, I'll let you listen to something. Then, as soon as I let you listen to it, then you'll know that I'm serious, and I said that you're running out of time.

Lewis then played a recording of Carter's voice that was saved onto his cell phone. During the recording, the victim stated,

> Carl, it's Beverly. I just want to let you know I'm okay.  I haven't been hurt. Just do what he says, and please don't call the police. If you call the police, it could be bad.  I just want you to know I love you very much.

The circuit court suppressed Lewis's custodial statement, and Lewis later filed a motion to suppress the phone recording. Subsequently, the circuit court ruled that the recording would remain admissible. In its January 5, 2016 order, the circuit court stated,

A previous order . . . suppressed various statements made by the defendant . . . because the defendant had been questioned after he had expressed a desire to have an attorney present. The order did not suppress a statement allegedly made by the victim in the case, Beverly Carter, which the defendant had recorded on a cell phone and played to the investigators during the interrogation. The court reasoned, in light of *United States v. Patane*, 542 U.S. 630 (2004), that introduction of the recording, though a result of illegal questioning, did not violate the defendant's *Miranda* rights. The recording of the victim was not testimonial, so under *Patane*, the court found that it violated neither his right to have an attorney present during interrogation nor the U.S. Constitution's right against self-incrimination. . . .

The defendant first asks the court to find that the recording should be suppressed under the Arkansas Constitution, which also guarantees in Article 2 the right to counsel and a protection against self-incrimination. The court is well aware that the federal constitution provides a baseline of rights which no state may violate, and the states may grant rights greater than that of the federal. But the defense provides no authority to show that the Arkansas Constitution, in offering parallel protection, grants rights beyond those expressed in the federal constitution.

The defense next argues that the United States Supreme Court wrongly decided *Patane* and that this court should not "extend" its ruling to an interpretation of the Arkansas Constitution. The court will not entertain this argument. The defense, again, has offered no authority to show that the Arkansas Constitution grants its citizens greater rights than the federal [constitution] such that *Patane* would not apply. The existence of parallel rights in the Arkansas Constitution does not give the court authority to second-guess U.S. Supreme Court precedent.

Finally, the defense asks that the court suppress the recording under Arkansas Rule of Criminal Procedure 16.2. The court finds that its previous ruling will stand and the recording will remain admissible.

With these relevant facts in mind, we turn to the applicable law. The Self-Incrimination Clause of the U.S. Constitution provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself[,]" *see* U.S. Const. amend. V, and the Arkansas Constitution provides that "nor shall any person be compelled, in any criminal case, to be a witness against himself[.]" Ark. Const. art. 2, § 8. Because the language of the federal and state constitutions is virtually identical, and because this court has not been provided any reason why it should interpret the provisions differently, this court will construe our constitution in the same way as the federal constitution. *See, e.g., Wilson v.*

*City of Pine Bluff*, 278 Ark. 65, 643 S.W.2d 569 (1982) (observing that when the language of the federal and state constitutions is identical, as in the instance of the confrontation clause, the due process clause, and several others, and there is no reason to construe our constitution other than in the same way as the federal constitution has been construed, this court considers a federal question, not a state one).

In the case at bar, the circuit court relied on the holding of *Patane*, 542 U.S. 630, in denying Lewis's motion to suppress the recorded statement. The Eighth Circuit succinctly discussed the Supreme Court's holding in *Patane*:

> In *Patane*, the defendant was lawfully arrested for violating a restraining order. *Id.* at 635, 124 S.Ct. 2620. After his arrest, a police officer attempted to read the defendant his *Miranda* rights, but was interrupted. *Id.* Responding to a question by the police officer, the defendant admitted there was a firearm in his bedroom. *Id.* The police officer seized the firearm. *Id.* The Court held that although the defendant's statement about the location of the gun must be suppressed, the gun itself was admissible. *Id.* at 642, 124 S.Ct. 2620. In so doing, the Court announced a rule that the lack of a *Miranda* warning does not justify the suppression of the physical evidence seized pursuant to a search warrant derived from a voluntary "un-warned" statement. *Id.*

*United States v. Villa-Gonzalez*, 623 F.3d 526, 534–35 (8th Cir. 2010). Because the Arkansas constitution mirrors the federal constitution, and because this court has not been provided any reason why it should interpret the provisions differently, this court adopts the holding in *Patane*. In this instance, we conclude that the recording of the victim was not a testimonial statement made by Lewis and was admissible into evidence. Thus, we hold that the circuit court properly denied Lewis's motion to suppress the recorded statement.

## C. Subpoenas

For the third point on appeal, Lewis argues that the circuit court erred in denying his motion to suppress certain evidence obtained through prosecutorial subpoenas. Those

subpoenas were used to obtain call logs associated with the TextMe number that Lewis had used to contact Carter. The State contends that the circuit court did not err in denying the motion to suppress because Lewis lacked standing to challenge the subpoenas.

The relevant facts are contained in the circuit court's December 9, 2015 order denying Lewis's motion to suppress. Investigator Jeff Allison of the Pulaski County Sheriff's Department—Criminal Investigative Division testified at the omnibus hearing that, after Carter's disappearance had been reported, the officers made an exigent-circumstance request to AT&T to procure her cell phone and SMS data records. Once the investigators had access to those records, they noticed that the victim recently had been in frequent contact—via phone calls and text messages—with a New York area code and phone number. Having access to the victim's Apple iCloud account, they noticed that this phone number was one of the few in her call history that was not identified by an associate of the victim. The investigators discovered that this same phone number had been written on an envelope in the victim's car. One of the investigators called the number and discovered that it was a "spoof number" associated with a Google app called TextMe. With the aid of the prosecutors, the investigators made an exigent-circumstance request to Google to obtain the call log of the TextMe number. They determined that the phone number was created by Lowery's account. Lewis moved to suppress records obtained from "multiple companies, including AT&T and Google," through a prosecutor's subpoena, and the circuit court denied his motion.

Prosecuting attorneys have an affirmative duty to investigate crime. *Gulley v. State*, 2012 Ark. 368, 423 S.W.3d 569. The prosecutor's power to subpoena must be used only

for a prosecutor's investigation. *State v. Hamzy*, 288 Ark. 561, 709 S.W.2d 397 (1986). The police do not have the authority to issue subpoenas. *Id.*, 709 S.W.2d 397. The prosecutor's power to subpoena must only be used as an investigatory tool and not as a tool for a police investigation. *Id.*, 709 S.W.2d 397. We will reverse a conviction when a prosecutor has abused his or her subpoena power, and the appellant has been prejudiced. *Anderson v. State*, 357 Ark. 180, 163 S.W.3d 333 (2004).

The circuit court, in support of its denial of Lewis's motion to suppress, cited *Hamzy*, 288 Ark. 561, 709 S.W.2d 397, for the proposition that Lewis did not have standing to challenge the subpoenas. In *Hamzy*, the police used a subpoena signed by a prosecutor to obtain information from a telephone company. We declared that the information from the telephone company had been unlawfully seized because that information, in turn, was used to obtain warrants to search the defendants' homes. We then concluded the defendants had not suffered a Fourth Amendment violation because they had no standing to challenge the search because they did not have an expectation of privacy in the records of a telephone company. *Id.*, 709 S.W.2d 397.

We agree with the circuit court's ruling to deny Lewis's motion to suppress because he did not have standing to challenge the subpoenas. Like the accused in *Hamzy*, Lewis cannot complain that the subpoenas violated his constitutional rights because those subpoenas were issued to third parties. For these reasons, we cannot say that the court erred in denying Lewis's motion to suppress.

D. Custodial Statement

For the fourth point on appeal, Lewis contends that the circuit court erred in admitting Lewis's second custodial statement. Specifically, Lewis argues that the statement should have been suppressed because it was the involuntary product of false promises by law enforcement. The State responds that this argument is not preserved for appellate review, and alternatively, that any error in admitting the statement was harmless.

The relevant facts are that the circuit court suppressed Lewis's first statement and denied Lewis's second statement because he reinitiated contact with law enforcement by requesting to speak to a federal agent. After speaking with FBI Special Agent Steve Burroughs, who assisted in interviewing Lewis, Lewis stated that he would "throw in the towel" if he could be prosecuted in federal court. Burroughs stated that he would "take the stuff" to the United States Attorney's Office but that he could not guarantee that Lewis would be prosecuted in federal court. Lewis stopped the interview and later stated, "I want to talk to that FBI guy." The officers returned with Lewis to the interview room, advised Lewis that his *Miranda* rights were still valid, and Lewis indicated that he understood. After some questioning, Lewis confessed that the victim's body "was at Argos [the cement plant] in a mixer" and requested an attorney.

Lewis contended in his motion to suppress that "[a]ny statements taken during said custodial interrogation were the result of . . . unauthorized promises of leniency by members of the arresting police agency, and are therefore involuntary and inadmissible for any purpose." Subsequently, the circuit court ruled:

> The court finds that the introduction of any statements the defendant made after he invoked his right to counsel in the presence of Officer Roy would be a

violation of his right to an attorney under *Edwards* [*v. Arizona*, 451 U.S. 477 (1981)]. The court finds further that the defendant's yelling for the investigators to return was a voluntary re-initiation of communication with the investigators.

The defense's Motion to Suppress Statements During Interrogation is therefore granted with respect to any statements made between his invocation of his right to an attorney in the presence of Officer Roy and his re-initiation of contact with the investigators by "yelling" and requesting to speak to the FBI agent again. The Motion is denied with respect to any statements he made during interrogation after that re-initiation but before he said the word "lawyer" and the investigators ceased communications with him.

We agree with the State's contention that this argument is not preserved. When an appellant has raised multiple arguments in his motion to suppress, we will refuse to reach the merits of those arguments that were not specifically ruled on by the trial court in denying the motion. *See Eastin v. State*, 370 Ark. 10, 257 S.W.3d 58 (2007). Even when an issue was raised in a written motion to suppress, if it is not developed, either factually or legally, during the hearing on the motion and the appellant fails to obtain a clear ruling on the issue, the issue is not preserved. *Id.*, 257 S.W.3d 58. Here, the circuit court did not rule specifically on the issue of any alleged promises of leniency. Thus, the promise-of-leniency argument advanced by Lewis is not preserved for appellate review. Accordingly, we hold that we are precluded from addressing Lewis's argument on this point.

E. Search of Lewis's Car

For the final point on appeal, Lewis argues that the circuit court erred in admitting certain items found in an inventory search of Lewis's car. Lewis maintains that the police officers lacked good cause to impound his vehicle and that the purpose of the inventory search was to obtain evidence instead of to protect his property.

Rule 12.6(b) of the Arkansas Rules of Criminal Procedure provides that "[a] vehicle impounded in consequence of an arrest, or retained in official custody for other good cause,

may be searched at such times and to such extent as is reasonably necessary for safekeeping of the vehicle and its contents." Police officers may conduct a warrantless inventory search of a vehicle that is being impounded to protect an owner's property while it is in the custody of the police, to ensure against claims of lost, stolen, or vandalized property, and to guard the police from danger. *Thompson v. State*, 333 Ark. 92, 966 S.W.2d 901 (1998). An inventory search, however, may not be used by the police as a guise for general rummaging for incriminating evidence. *Id.*, 966 S.W.2d 901. Thus, the police may impound a vehicle and inventory its contents only if the actions are taken in good faith and in accordance with standard police procedures or policies. *Id.*, 966 S.W.2d 901.

Further, this court has upheld an inventory search on the basis that it was reasonably necessary for safekeeping purposes because the vehicle was stopped or abandoned in a public place. *See, e.g.*, *Asher v. State*, 303 Ark. 202, 795 S.W.2d 350 (1990) (affirming inventory search of vehicle when driver was removed from the accident scene in semiconscious state); *Cooper v. State*, 297 Ark. 478, 763 S.W.2d 645 (1989) (affirming inventory search of vehicle when narcotics suspect fled scene after attempting to shoot officer); *Lipovich v. State*, 265 Ark. 55, 576 S.W.2d 720 (1979) (affirming inventory search when the vehicle, reported as stolen, was found abandoned and was a hazard on a public highway).

In the case at bar, the circuit court found that "[a]s the investigators were left with no option other than to tow the vehicle, that initial inventory done at the scene was, therefore, legal. . . . Where a vehicle storage report has been completed at an accident scene prior to towing, as was done here, those items [in the inventory search] are properly

16

admitted as the result of an inventory search." We agree with the circuit court's ruling on this issue.

Here, Lewis had wrecked his vehicle and had been transported to the hospital. Under these circumstances, the officers' policies mandated the impoundment of the vehicle and an inventory of its contents. It is permissible for an officer to impound and inventory a vehicle when the driver is physically unable to drive the car and when leaving it on the side of the road would create a safety hazard. *Thompson*, 333 Ark. 92, 966 S.W.2d 901. From an objective standpoint, the officer had a legitimate reason to impound the vehicle and inventory its contents. Further, the inventory search was conducted in accordance with the officers' established procedures. Thus, we hold that the inventory search was not an "unreasonable search" under the Fourth Amendment, and we affirm the circuit court's ruling to deny Lewis's motion to suppress.

### III. *State's Cross-Appeal*

On cross-appeal, the State argues that the circuit court erred in granting Lewis's motion to suppress certain evidence found at his residence and in his 2012 black Ford Fusion. Lewis subsequently filed a motion to dismiss the State's cross-appeal alleging that, pursuant to Rule 60(b), the circuit court's order was a nunc pro tunc order to correct the clerical errors and should be dismissed as untimely. The State responded that the amended sentencing order, dated March 30, 2016, was a final order, pursuant to Rule 3 of the Arkansas Rules of Appellate Procedure–Criminal, from which it could pursue a cross-appeal.

SLIP OPINION

A circuit court has the power to correct clerical errors nunc pro tunc so that the record speaks the truth. *State v. Rowe*, 374 Ark. 19, 285 S.W.3d 614 (2008). Pursuant to Rule 60(b) of the Arkansas Rules of Civil Procedure, a circuit court may at any time correct clerical mistakes in judgments, decrees, orders, or other parts of the record and errors therein arising from oversight or omission. *Cason v. State*, 2016 Ark. 387, 502 S.W.3d 510 (per curiam). A true clerical error is one that arises, not from an exercise of the court's judicial discretion but from a mistake on the part of its officers. *Id.*, 502 S.W.3d 510.

An appeal from a nunc pro tunc order may challenge only those corrections made in the nunc pro tunc order; it may not challenge issues in the original order that could have been appealed earlier. *Francis v. Protective Life Ins. Co.*, 371 Ark. 285, 265 S.W.3d 117 (2007). We have dismissed appeals as untimely when appellants, after the time for appealing from the original order had expired, attempted to appeal issues not addressed in or corrected by the nunc pro tunc order. *Id.*, 265 S.W.3d 117.

In this instance, the circuit court entered its sentencing order on January 26, 2016, and entered an amended sentencing order on March 30, 2016, making several corrections to the original January 2016 sentencing order. We conclude that the circuit court's March 30, 2016 order was a nunc pro tunc order, and the State may not challenge issues in the nunc pro tunc order that could have been appealed earlier. Under our precedent, we must dismiss the State's cross-appeal as untimely.

## IV. *Rule 4-3(i) Review*

In compliance with Arkansas Supreme Court Rule 4-3(i), the record has been examined for all objections, motions, and requests made by either party that were decided adversely to Lewis, and no prejudicial error has been found.

Affirmed on direct appeal; dismissed on cross-appeal.

HART, J., concurs.

**JOSEPHINE LINKER HART, Justice, concurring.** I agree that the circuit court did not err in refusing to suppress the voice recording on Lewis's cell phone. However, I believe that the majority's reliance on *United States v. Patane*, 542 U.S. 630 (2004), is misplaced. Furthermore, adopting as Arkansas law the *Patane* rationale given the facts in this case is at least precipitous, if not unwise. The majority's reasoning, i.e., the United States Constitution and the Arkansas Constitution does not persuade. It is the job of the Arkansas Supreme Court, and not the Supreme Court of the United States to interpret the Arkansas Constitution.

The factual predicate for *Patane* is not present here. The *Patane* court framed the issue as, "In this case we must decide whether a failure to give a suspect the warnings prescribed by *Miranda v. Arizona*, 384 U.S. 436 (1966), requires suppression of the physical fruits of the suspect's unwarned but voluntary statements." Following Patane's arrest for harassing his ex-girlfriend, but after his release on bond, he violated a restraining order prohibiting him from contacting her. *Id.* at 633–34. Before the police went to Patane's residence to arrest him, they learned that Patane possessed a handgun. *Id.* One of the officers began to advise Patane of his *Miranda* rights but got no further than the right to

remain silent, when Patane interrupted, asserting that he knew his rights. *Id.* Subsequently, in response to repeated direct questions about the location of the handgun, which overcame his stated reluctance to reveal its location, Patane told the police it was located in his bedroom and gave them permission to retrieve it. *Id.*

Conversely, in the case before us, Lewis had twice been given his *Miranda* warnings. In fact, Lewis had invoked his rights under *Miranda* to North Little Rock police officers, though not to the Pulaski County deputies who also Mirandized him and were unaware that Lewis had asserted his rights to the North Little Rock officers. While it is true that the Pulaski County deputies questioned him, Lewis's revelation about the voice recording was not in response to a direct question. Lewis spontaneously told the deputies, "You want me to show you what I'm talking about? Where's my phone?" He then stated, "I'm gonna show you something. Show you something while you're sitting right there and while he's on the other side. Well, actually, I'll let you listen to something. Then, as soon as I let you listen to it, then you'll know that I'm serious, and I said that you're running out of time." The deputies complied with Lewis's request and handed him his phone. Lewis then played the voice recording,

> Carl, it's Beverly. I just want to let you know I'm okay. I haven't been hurt. Just do what he says, and please don't call the police. If you call the police, it could be bad. Just want you to know I love you very much.

The deputies requested Lewis to play the recording a second time, but he refused.

The factual disparity between *Patane* and the case before us is significant. Patane was considered "unwarned," while Lewis was warned *twice*. While both cases involved the police ignoring the accused person's stated intent not to respond to questions, Patane, under

pressure, revealed the presence of the handgun in response to direct questioning, while Lewis revealed the presence of the voice recording spontaneously. Accordingly, there is no reason to try to fit the case before us into the *Patane* pigeon hole.

When we review the denial of a motion to suppress evidence from a custodial interrogation, we make an independent determination based on the totality of the circumstances. *Grillot v. State*, 353 Ark. 294, 107 S.W.3d 136 (2003). In *Landrum v. State*, 326 Ark. 994, 936 S.W.2d 505 (1996), this court stated that the purpose of the exclusionary rule is to deter police misconduct, and where there is no police misconduct, there is no need to suppress evidence.

As noted previously, Lewis himself directed the deputies to bring him his cell phone, which had been lawfully seized. There is no indication that the deputies pressured Lewis to play the recording, or that the deputies even knew it existed. A spontaneous statement, regardless of the dictates of *Miranda* is not automatically rendered inadmissible. *Stone v. State*, 321 Ark. 46, 900 S.W.2d 515 (1995). Spontaneous statements are not compelled or coerced in any way that violates the Fifth Amendment's privilege against self-incrimination. *Id.* As this court noted in *Stone*, "[t]he *Miranda* Court itself recognized this rule of law when it stated: 'Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today." *Id.* at 53, 900 S.W.2d at 519 (quoting *Miranda*, 384 U.S. at 478). Under our totality-of-the-circumstances review, it is obvious that Lewis controlled the circumstances that resulted in him revealing the voice recording—not the police. Accordingly, there was no police misconduct, and under *Landrum*, there is no reason to suppress the voice recording.

The soundness of this reasoning is manifest. If this court were to hold that the circuit court erred in failing to suppress the voice recording, it would grant every accused person the power to prevent the State from using any evidence that had yet to be discovered by simply invoking his or her *Miranda* rights and directing the police to its location.

Because existing Arkansas Supreme Court precedent adequately addresses the situation, it is unnecessary to adopt a new common-law rule affecting our rights under the Arkansas Constitution. The question of whether the *Patane* rule is sound is not illuminated by the facts and circumstances in the case before us. Accordingly, it is not proper to adopt such a rule; it would be prudent to wait for a case in which the factual predicate more closely mirrors *Patane,* before we make such a momentous decision.

I concur.

*James Law Firm*, by: *William O. "Bill" James, Jr.*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Kathryn Henry* and *Adam Jackson*, Ass't Attorneys Gen., for appellee.