We first address appellant Dye's argument on appeal that there was insufficient evidence to support his convictions. Appellant initially contends that there was nothing to connect him with the paraphernalia found in the truck, noting that there was no evidence as to who owned the truck and the paraphernalia was concealed in a pouch between the two front seats. Dye further argues that there was insufficient evidence to link him with the items seized from the residence because it was never clearly established that he occupied the residence. Alternatively, Dye argues that, at most, the State showed that he occupied the residence jointly with Watkins, and that there were no additional factors linking him to possession of the contraband. For these reasons, appellant Dye argues that his convictions should be reversed.
Appellant's argument as to the items seized from the truck is misplaced because the State's allegations against Dye were based on the contraband seized from Dye's residence; not the truck. Thus, it is irrelevant whether appellant was in possession of the items seized from the truck. On the evidence contained in the record, we hold that there was substantial evidence to support the trial court's finding that appellant was in possession of the methamphetamine, the drug paraphernalia, and the firearm found in his residence.
Constructive possession can be inferred when the contraband is found in a place immediately and exclusively accessible to the defendant and subject to his control. Harjo v. State , 2017 Ark. App. 337, 522 S.W.3d 839. Constructive possession can also be inferred when the contraband is in the joint control of the accused and another. Id. However, joint occupancy alone is not sufficient to establish possession or joint possession; there must be some additional factor linking the accused to the contraband. Id. In such cases, the State must prove that the accused exercised care, control, and management over the contraband and that the accused knew the matter possessed was contraband. Id. Control over the contraband can be inferred from the circumstances, such as the proximity of the contraband to the accused, the fact that it is in plain view, and the ownership of the property where the contraband is found. Nichols v. State , 306 Ark. 417, 815 S.W.2d 382 (1991).
Contrary to appellant's argument, there was evidence that he occupied the house and that it was his residence. Upon inquiry by the police, Dye stated that Watkins was staying with him at his residence. Dye orally consented to the search of his residence and provided the police with the key that opened the front door. Dye also signed the written consent form, which stated that the house to be searched, 4616 Industrial Park Road, was "my house." Finally, Dye voluntarily informed the police about a potentially dangerous dog in the house and a shotgun in his bedroom, both of which were found by the police after they entered the house. Therefore, the State sufficiently established that this was appellant Dye's house.
After the police entered the house, they found the contraband in appellant Dye's bedroom. Dye had told the police they would find a shotgun in a bedroom near his bed. The shotgun was located in the bedroom closet. In plain view in the headboard area of the bed the police found a spoon, which was later confirmed to contain methamphetamine, and some straws with white residue.
This evidence was sufficient to prove that appellant Dye constructively possessed the contraband. The contraband *305 was found in his house and in his bedroom, which were factors linking him to possession of the items. Therefore, we conclude that there was substantial evidence to support appellant's convictions for possession of methamphetamine, possession of drug paraphernalia, and being a felon in possession of a firearm.
Appellant next argues, for various reasons, that the contraband seized from his house should have been suppressed because it was illegally obtained. First, he claims that the initial encounter by law enforcement was not authorized by Rule 2.2 of the Arkansas Rules of Criminal Procedure. Next, he argues that, even if the initial encounter had been lawful, his subsequent and continued detention was not authorized under Rule 3.1.[4] Finally, he argues that even if the encounter and continued detention had been lawful, the consent obtained by the officers to search his house was invalid because it was obtained without Miranda warnings and was not given freely and voluntarily because he was under the influence of drugs at the time of his consent. For each of these reasons, Dye contends that the contraband seized from the residence was fruit of the poisonous tree.
In reviewing the denial of a motion to suppress evidence, this court conducts a de novo review based on the totality of the circumstances, reviewing findings of historical facts for clear error and determining whether those facts give rise to reasonable suspicion or probable cause, giving due weight to inferences drawn by the trial court. Pickering v. State , 2012 Ark. 280, 412 S.W.3d 143. A finding is clearly erroneous when, even if there is evidence to support it, the appellate court, after review of the entire evidence, is left with the definite and firm conviction that a mistake has been made. Id. We defer to the superiority of the trial court to evaluate the credibility of witnesses who testify at a suppression hearing. Id.
In Lewis v. State , 2017 Ark. 211, at 6, 521 S.W.3d 466, 471-72, the Arkansas Supreme Court articulated three types of encounters with law-enforcement officers:
Police-citizen encounters have been classified into three categories. The first category is contemplated by Rule 2.2 of the Arkansas Rules of Criminal Procedure. The authority for a police officer to act in a nonseizure encounter is recognized in Rule 2.2(a) which provides,
A law enforcement officer may request any person to furnish information or otherwise cooperate in the investigation or prevention of crime. The officer may request the person to respond to questions, to appear at a police station, or to comply with any other reasonable request.
This type of nonseizure encounter occurs when an officer merely approaches an individual on a street and asks if he is willing to answer some questions. Thompson v. State , 303 Ark. 407, 797 S.W.2d 450 (1990). This encounter is consensual and does not constitute a seizure. Scott v. State , 347 Ark. 767, 67 S.W.3d 567 (2002). A seizure of a person occurs when an officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen. Id. , 67 S.W.3d 567. The initially consensual encounter is transformed into a seizure when, considering all the circumstances, a reasonable person would believe that he is not free to leave. Id. , 67 S.W.3d 567. The second category is contemplated by *306 Rule 3.1 of the Arkansas Rules of Criminal Procedure. Thompson , 303 Ark. 407, 797 S.W.2d 450. This second type of encounter occurs when the officer justifiably restrains an individual for a short period of time because the officer has a reasonable, articulable suspicion that the person has committed or is about to commit a crime. Thompson , 303 Ark. 407, 797 S.W.2d 450. The final category is the full-scale arrest, which must be based on probable cause. Scott , 347 Ark. 767, 67 S.W.3d 567.
Appellant argues that the initial encounter by law enforcement was unjustified under Rule 2.2. Our supreme court has held that an encounter under Rule 2.2 is permissible only if the information or cooperation sought is in aid of an investigation or the prevention of a particular crime. Hammons v. State , 327 Ark. 520, 940 S.W.2d 424 (1997). Appellant contends that in this case, Officer Jones was not investigating any crime but was merely trying to find out what Dye and the others were doing on the property.
We disagree with appellant's claim that the initial encounter was unlawful. Dye asserts that he was approached under the same flawed reasoning employed by the officer in Jennings v. State , 69 Ark. App. 50, 10 S.W.3d 105 (2000). However, Jennings is distinguishable. In Jennings , the police officer stopped the appellant and his companion on a public street corner of a known drug area to "check them out" and see if they were doing anything wrong. This court held that because there was no testimony that the officer was investigating or preventing a crime when she encountered appellant and his companion, the stop was not justified under Rule 2.2. However, in this case, Officer Jones testified that he was on "extra patrol" late at night in an area where there had been complaints of trespassing on private property. He encountered two vehicles parked next to each other on the private gas-well property. This was the same gas-well property where the prior trespassing had been reported. We conclude under these circumstances that the initial encounter was lawful under Rule 2.2 because, unlike Jennings , the appellant was not on a public street but rather on private property where there had been complaints of trespassing. Because Officer Jones was investigating the potential crime of trespass he was authorized under Rule 2.2 to stop and request that Dye cooperate in the investigation or prevention of crime.
We next turn to appellant's argument that the encounter was transformed into the second category-one of a seizure where he was being restrained by the officer-without the officer having the requisite reasonable suspicion under Rule 3.1 and for a longer time period than is authorized under this rule. Arkansas Rule of Criminal Procedure 3.1 provides:
A law enforcement officer lawfully present in any place may, in the performance of his duties, stop and detain any person who he reasonably suspects is committing, has committed, or is about to commit (1) a felony, or (2) a misdemeanor involving danger of forcible injury to persons or of appropriation of or damage to property, if such action is reasonably necessary either to obtain or verify the identification of the person or to determine the lawfulness of his conduct. An officer acting under this rule may require the person to remain in or near such place in the officer's presence for a period of not more than fifteen (15) minutes or for such time as is reasonable under the circumstances. At the end of such period the person detained shall be released without further restraint, or arrested and charged with an offense.
*307 Reasonable suspicion depends on whether, under the totality of the circumstances, the police have specific, particularized, and articulable reasons indicating that the person may be involved in criminal activity. Smith v. State , 343 Ark. 552, 39 S.W.3d 739 (2001).
The State argues that there was no evidence that appellant was not free to leave and that the consensual encounter never transformed into a seizure of his person. We do not agree. In Lewis , supra , the supreme court held that a consensual encounter with law enforcement is transformed into a seizure when, considering all the circumstances, a reasonable person would believe that he is not free to leave. In this case, within minutes of the consensual police-citizen encounter, Watkins fled the scene. During the next ten minutes officers searched for Watkins, during which time Officer Jones remained with Dye at the truck and ultimately asked Dye for permission to search for Watkins in Dye's residence. We believe a reasonable person in Dye's position would not believe he was free to leave during this time frame, as demonstrated by the officers' reaction when Watkins left the scene. The police search for Watkins, coupled with one officer remaining with appellant and requesting to search Dye's residence, amounted to a show of authority that prevented Dye from leaving the scene. Therefore, we hold that appellant Dye was being detained as contemplated by Rule 3.1.
Having concluded that appellant was being detained, the next inquiry under Rule 3.1 is whether the police had reasonable suspicion that appellant was committing, had committed, or was about to commit a felony or misdemeanor involving danger of forcible injury to persons or of appropriation of or damage to property. We conclude that Officer Jones had reasonable suspicion to detain Dye pursuant to Rule 3.1.
Arkansas Code Annotated section 16-81-203 (Repl. 2005) provides that the following are among the factors to be considered in determining if the officer has grounds to reasonably suspect:
(1) The demeanor of the suspect;
(2) The gait and manner of the suspect ;
(3) Any knowledge the officer may have of the suspect's background or character ;
(4) Whether the suspect is carrying anything, and what he or she is carrying ;
(5) The manner in which the suspect is dressed, including bulges in clothing, when considered in light of all the other factors;
(6) The time of day or night the suspect is observed ;
(7) Any overheard conversation of the suspect;
(8) The particular streets and areas involved ;
(9) Any information received from third persons, whether they are known or unknown ;
(10) Whether the suspect is consorting with others whose conduct is reasonably suspect ;
(11) The suspect's proximity to known criminal conduct ;
(12) The incidence of crime in the immediate neighborhood ;
(13) The suspect's apparent effort to conceal an article; and
(14) The apparent effort of the suspect to avoid identification or confrontation by a law enforcement officer.
(Emphasis added.) The supreme court has stated that this section is merely illustrative, and not exhaustive, of the types of *308 factors that may be considered in forming reasonable suspicion. Laime v. State , 347 Ark. 142, 60 S.W.3d 464 (2001).
The factors that combined to give Officer Jones reasonable suspicion that Dye was engaged in criminal activity are (a) there had been reports of trespassing on the private gas-well property where Dye was located, resulting in extra police patrol in the area; (b) it was approximately midnight; (c) the truck occupied by Dye was parked side-by-side with another vehicle; (d) Dye was holding cash in his hand[5] ; (e) there was a black pouch containing plastic baggies in plain sight between the front seats of the truck; (f) Officer Jones determined that Dye had prior methamphetamine convictions; and (g) Dye's co-occupant fled the scene shortly after the officers' arrival. We conclude on these facts that Officer Jones had specific, particularized, and articulable reasons that Dye may be involved in criminal activity. See Smith, supra . Although any one of these factors, standing alone, may not have been enough to lead to reasonable suspicion, viewing the totality of these circumstances, we cannot say the trial court clearly erred in determining that the police had reasonable suspicion to detain appellant. See Menne v. State , 2012 Ark. 37, 386 S.W.3d 451.
Our remaining inquiry under Rule 3.1 is whether the duration of the police detention was within the time constraint allowed by the rule. Appellant argues that because the detention exceeded fifteen minutes, it was excessive and he should have been permitted to leave. We disagree.
According to the plain language of the rule, the alternative time period allowed the officer to detain appellant for "such time as [was] reasonable under the circumstances" and was not restricted to a specific number of minutes. Johnson v. State , 2012 Ark. App. 167, 392 S.W.3d 897. In Omar v. State , 99 Ark. App. 436, 262 S.W.3d 195 (2007), we held that a thirty-seven minute detention was not unreasonable. In this case, appellant was detained for about twenty minutes from the time of the initial stop until the time the police began searching his house. In light of the suspicious information known to the officers and the fact that they were still actively searching for appellant's companion, we hold that this time period was not unreasonable.
Appellant's final point in support of his motion to suppress is that (1) the police obtained his consent to search without Miranda warnings, and (2) his consent was not voluntarily and willingly given because he was under the influence of drugs at the time it was given. We are not persuaded by either of these contentions.
In this case, the police obtained appellant's consent to search his house both verbally and in writing. The written consent form specifically advised appellant of his constitutional right to refuse consent, and with this information, appellant chose to sign the form consenting to the search. This consent was validly obtained by the officers, and appellant offers no authority that Miranda warnings were required to obtain his consent. Dye also argues that any incriminating statements he made should have been suppressed. However, the only incriminating statement appellant gave to the police was that there was a gun in his bedroom, and this statement was not the result of a police interrogation. Rather, it was a spontaneous, voluntary statement. A Miranda *309 warning is not required for spontaneous, voluntary statements. Miranda v. Arizona , 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
With regard to appellant's argument that his consent was involuntary, we recognize that under Aransas Rule of Criminal Procedure 11.1, it is the State's burden to prove by clear and positive evidence that consent to search was freely and voluntarily given and that there was no duress or coercion. There was no evidence of any duress or coercion in obtaining appellant's consent, and Officer Jones testified that appellant appeared to understand what was going on and what was being asked of him. Appellant also gave officers the key to his house and voluntarily advised the police of some of its contents. Based on Officer Jones's testimony, we hold that there was no error in the trial court's finding that appellant's consent was freely and voluntarily given.
Having concluded that there was sufficient evidence to support appellant's convictions and that the trial court's denial of appellant's motion to suppress was not clearly erroneous, appellant's convictions are affirmed.
Affirmed.
Klappenbach and Whiteaker, JJ., agree.

Although appellant mistakenly refers to Rule 3.3 in his brief, it is clear from the context of his argument that he means Rule 3.1.

We acknowledge that Dye told the police that the cash in his hand was to buy cigarettes, a lawful product. However, Dye's explanation of the cash does not rule out reasonable suspicion in light of the other factors present.