Cite as 2020 Ark. App. 371

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CR-19-712

| | | |
|---|---|---|
| | | **Opinion Delivered** September 2, 2020 |
| ROBERT POWELL | APPELLANT | APPEAL FROM THE WHITE COUNTY CIRCUIT COURT [NO. 73CR-18-374] |
| V. | | |
| | | HONORABLE ROBERT EDWARDS, JUDGE |
| STATE OF ARKANSAS | APPELLEE | AFFIRMED |

## LARRY D. VAUGHT, Judge

Robert Powell appeals his conviction by the White County Circuit Court of one count of video voyeurism. On appeal, he argues that the evidence presented against him was insufficient to support the conviction, that the court erred in denying his motion to suppress, and that the court erroneously departed from the sentencing guidelines. We affirm his conviction and sentencing.

After selling their house, Brian and Alli Bullard temporarily rented a cabin at Camp Wyldewood with their daughter while they looked for a new home. The rental agreement was made with the appellant, Robert Powell, who was their friend and the camp's director.

At some point while they were residing in the cabin, Powell told the Bullards via text message that he was going to tape electrical outlets to the walls to mark where he wanted to install new ones. Upon returning from a weekend trip, the Bullards found several outlets taped

to the walls of the cabin. About a week later, Brian saw a glowing light coming from one of the outlets in his bedroom and discovered that the outlet was a hidden camera.

After he discovered the camera, Brian called the White County Sheriff's Department. Detective Heather Meadows came to the cabin to investigate. She took possession of the camera from Brian and viewed the contents of the camera's SD card, on which she found several video clips, including footage of Powell taping the camera to the wall, Alli Bullard naked from the waist up, and the Bullards' daughter changing her clothes.

Lieutenant Chancy Warden and Detective Jeremy Bokker then went to Powell's house and asked if he would speak with them. Warden asked Powell to come outside on the porch because he did not want to discuss the sensitive nature of the investigation in front of Powell's children. Warden informed Powell that the Bullards had discovered the camera in the Bullards' bedroom.  Warden testified that Powell stated his life was over and lamented that he would lose his job, his family, and his house. Powell agreed to go to the sheriff's department but could not leave his children unattended. Because it was cold and raining, Powell followed Warden and Bokker out to their truck to continue the discussion.

Powell sat in the front passenger seat of the truck. Warden and Bokker waited with Powell until his wife arrived to watch the children. During the wait, Powell volunteered to give up his phone and laptop, was interviewed by Warden, confessed to putting up the camera, and wrote an apology letter to the Bullards. Powell also went into the house to retrieve his laptop, walked to a neighbor's house to look for someone to watch his kids, and called and texted his wife. Detectives stated that they followed Powell as he moved around because they were

2

concerned he might harm himself based on his comments. When his wife arrived, Powell spoke to her privately before leaving with Warden and Bokker.

Powell agreed to go to Camp Wyldewood and consented to a search of his office. After the search at Camp Wyldewood, Powell agreed to go to the sheriff's department for an interview. There, Powell was allowed to call his wife and go to the bathroom without an escort. At the beginning of the interview, he was told he was free to leave. During the interview, Powell again confessed to having placed the camera in the Bullards' bedroom. At the end of the interview, he was arrested and booked into jail.

Powell was charged with video voyeurism. In light of the evidence found on his laptop, he was charged with an additional count of video voyeurism and two counts of possession of child pornography. Prior to trial, Powell moved to suppress the videos from the outlet camera, his confessions, and the evidence found on his laptop. The circuit court denied his motion.

After a bench trial, the circuit court found Powell guilty of one count of video voyeurism related to the outlet camera and two counts of possession of child pornography. Powell was acquitted on the second video-voyeurism charge. After the discovery of new evidence, the circuit court granted a joint posttrial motion to vacate the child-pornography convictions. The circuit court sentenced Powell to three years in prison for his sole conviction of video voyeurism. This timely appeal follows.

Powell's first point on appeal is a challenge to the sufficiency of the evidence. He argues that because the camera was discovered and reported to police before he was able to retrieve the SD card and view the images, he cannot be guilty of the crime of video voyeurism. In reviewing a challenge to the sufficiency of the evidence on appeal, we must view the evidence

3

in the light most favorable to the State, considering only the evidence that supports the guilty verdict. *Lowe v. State*, 2016 Ark. App. 389, at 3, 500 S.W.3d 176, 178. We will affirm a conviction if there is substantial evidence to support it. *Henson v. State*, 2014 Ark. App. 703, at 3, 450 S.W.3d 677, 679. The evidence, whether direct or circumstantial, is substantial and sufficient to support a conviction if it compels a conclusion and passes beyond mere speculation or conjecture. *Id.* at 3–4, 450 S.W.3d at 679.

Powell's sufficiency argument hinges on an issue of statutory interpretation, which we review de novo. *Ealy v. State*, 2017 Ark. App. 35, at 3, 511 S.W.3d 355, 357. We must adhere to the basic rule of statutory construction, which is to give effect to the intent of the legislature. *Id.* This court will construe the statute just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Id.*

Under the version of the statute applicable to Powell's conduct, a defendant commits the crime of video voyeurism by using "a camera . . . for the purpose of secretly observing, viewing, photographing, filming, or videotaping a person present in a residence . . . if that person: (1) [i]s in a private area out of public view; (2) [h]as a reasonable expectation of privacy; and (3) [h]as not consented to the observation." Ark. Code Ann. § 5-16-101(a) (Supp. 2019). Powell argues that the use of the words "observing" and "observation" in the statute means that his crime was inchoate because he did not view the images. We disagree. The statute prohibits the use of a camera for a particular purpose, and Powell used a camera with the necessary intent. While the statute discusses whether the victim has "consented to the observation," that provision addresses consent, not whether the defendant is ultimately successful in observing the images. Moreover, the statute states that the camera be used "for

4

the purpose of secretly observing . . . *or* videotaping," and there is no dispute that Powell used the camera to secretly videotape the Bullards. We therefore affirm on this point.

Powell argues that the court erred in denying his motion to suppress the contents of the SD card based on his claim that the card was the product of an unconstitutional search. This argument has no merit.

In reviewing the denial of a motion to suppress, we conduct a de novo review based on the totality of the circumstances, reviewing findings of fact for clear error and giving due weight to inferences drawn by the circuit court. *Dye v. State*, 2018 Ark. App. 545, at 8, 564 S.W.3d 299, 305. Our court "defers to the superior position of the circuit court to determine the credibility of witnesses and to resolve evidentiary conflicts but resolves legal questions through an independent determination on the totality of the circumstances." *Collins v. State*, 2014 Ark. App. 574, at 4, 446 S.W.3d 199, 203. "A finding is clearly erroneous when, even if there is evidence to support it, the appellate court, after review of the entire evidence, is left with the definite and firm conviction that a mistake has been made." *Dye*, 2018 Ark. App. 545, at 8, 564 S.W.3d at 305.

Powell's argument fails because he lacks standing to challenge the search of an SD card for which he had no reasonable expectation of privacy. The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." U.S. Const. amend. IV. It is well settled that a defendant must have standing before he can challenge a search on Fourth Amendment grounds. *Fouse v. State*, 73 Ark. App. 134, 139, 43 S.W.3d 158, 162 (2001). "The pertinent inquiry regarding standing to challenge a search is whether a defendant manifested a subjective

expectation of privacy in the area searched and whether society is prepared to recognize that expectation as reasonable." *Id.* "[T]he defendant, as the proponent of a motion to suppress, bears the burden of establishing that his Fourth Amendment rights have been violated." *Embry v. State*, 70 Ark. App. 122, 125, 15 S.W.3d 367, 369 (2000).

We affirm the court's denial of Powell's motion to suppress the SD card because "a person's Fourth Amendment rights are not violated by the introduction of damaging evidence secured by a search of a third person's premises or property." *Fouse*, 73 Ark. App. at 139, 43 S.W.3d at 162. This is true even if the person claims ownership in the property seized. *Walley v. State*, 353 Ark. 586, 605, 112 S.W.3d 349, 360 (2003); *Hall v. State*, 326 Ark. 318, 327, 933 S.W.2d 363, 368 (1996). We have also held that "[t]he seizure of abandoned items . . . is said to be a seizure 'without a search.'" *Rabun v. State*, 36 Ark. App. 237, 240, 821 S.W.2d 62, 64 (1991) (quoting *Webb v. State*, 269 Ark. 415, 422, 601 S.W.2d 848, 853 (1980)). We find it nonsensical for Powell to claim that he retained a privacy interest in a hidden camera that he secretly placed in the Bullards' bedroom. It would defy logic and reason for us to hold that Powell's Fourth Amendment rights were somehow violated when the Bullards reported the hidden camera to police and invited them to investigate.

Next, Powell argues that the court erred in refusing to suppress evidence obtained when the officers came to Powell's home and spoke to him. Powell claims that his statements and the evidence he turned over to police, including his laptop, were the product of an unconstitutional seizure. Again, we disagree.

"Whether a person has been seized within the meaning of the [F]ourth [A]mendment depends on whether, in view of all of the circumstances surrounding the incident, a reasonable

person would have believed that he was not free to leave." *Phillips v. State*, 53 Ark. App. 36, 39, 918 S.W.2d 721, 723 (1996). When there is no evidence "indicating that the officer restrained the liberty of the appellant by means of physical force or a show of authority[,]" there is no seizure under the Fourth Amendment. *Id.* Here, the circuit court found that

> [t]he defendant voluntarily provided his laptop from his home to Officers Bokker and Warden and there was no illegal seizure of the laptop computer. The court finds the defendant voluntarily accompanied Officers Bokker and Warden to the White County Sheriff's office after taking the defendant to Camp Wyldewood to retrieve other items of evidence.

We have conducted a de novo review based on the totality of the circumstances, reviewing findings of fact for clear error, and giving due weight to inferences drawn by the circuit court. *Dye*, 2018 Ark. App. 545, at 8, 564 S.W.3d at 305. On that standard, we cannot conclude that it was clear error for the court to find that Powell voluntarily accompanied the officers and provided the items.

The State presented evidence that while the officers were at his house, Powell was free to come and go as he pleased. He was never handcuffed. The detectives asked for his cooperation in obtaining evidence at his home and at Camp Wyldewood, and Powell complied with their requests. He voluntarily followed the detectives to their truck, sat in the front seat of the truck, went back into the house to collect his laptop, called and texted his wife, walked to a neighbor's house to see if the neighbor could watch his kids, and had a private conversation with his wife before leaving with the detectives. On the ride to Camp Wyldewood, Powell sat in the front passenger seat of the truck without handcuffs or other restraints. He then led the detectives around the camp and gave them consent to search his office. After the search, he agreed to go to the sheriff's department for an interview. At the

7

sheriff's department, he was allowed to call his wife and was able to get up and go to the bathroom unsupervised. Prior to the interview, he was specifically told that he was free to leave. The officers testified that it was not until after the interview—during which he confessed to having placed the camera in the Bullards' cabin—that Powell was finally placed under arrest.

We also note that Powell's conviction would be affirmed even if we agreed with his argument that the court erred in denying his motion to suppress the evidence obtained from him during this interaction with police. The denial of a motion to suppress can be harmless error when the evidence of guilt is overwhelming and the error is slight, or this court concludes beyond a reasonable doubt that the error did not contribute to the verdict. *Livingston v. State*, 2013 Ark. 264, 428 S.W.3d 474. Powell's text messages to the Bullards and his appearance on the video installing the hidden camera would be enough to support his conviction, even without his confession or any evidence obtained from his home.

Finally, Powell challenges his sentence. Powell was convicted of a Class D felony with a sentencing range of zero to six years in prison. Ark. Code Ann. § 5-4-401(a)(5) (Repl. 2013); Ark. Code Ann. § 5-16-101(c)(1). Due to Powell's lack of criminal history, the voluntary sentencing guidelines called for community corrections or alternative sentence. The court departed from those guidelines and sentenced Powell to three years in prison. The court provided clear analysis for its departure from the guidelines. It discussed the matter in open court, noted two aggravating factors on the sentencing order, and gave Powell a sentence that was less than the maximum allowed under the law. We are unable to address the merits of whether the court's departure from the guidelines was warranted because Powell failed to object to it below. We will adhere to the well-established precedent that requires a

contemporaneous objection to preserve an issue for appeal. *Anderson v. State*, 353 Ark. 384, 395, 108 S.W.3d 592, 599 (2003).

Affirmed.

GLADWIN and SWITZER, JJ., agree.

*The Lane Firm*, by: *Jonathan T. Lane*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Joseph Karl Luebke*, Ass't Att'y Gen., for appellee.